1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  MORRISON & FOERSTER LLP
   425 Market Street
3  San Francisco, California 94105-2482
   Telephone: (415) 268-7000
4  Facsimile: (415) 268-7522

5  Attorneys for Defendant
   SHORELINE BIOSCIENCES, INC.
6

7  *Appearances of Counsel Continued on Next Page*

8

9             **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11  FATE THERAPEUTICS, INC. and          Case No. 3:22-cv-00676-RBM-MSB
    WHITEHEAD INSTITUTE FOR
12  BIOMEDICAL RESEARCH,                 **SHORELINE BIOSCIENCES,
                                         INC.'S ANSWER AND
13            Plaintiffs,                COUNTERCLAIMS TO FATE
                                         THERAPEUTICS, INC.'S AND
14       v.                              WHITEHEAD INSTITUTE FOR
                                         BIOMEDICAL RESEARCH'S
15  SHORELINE BIOSCIENCES, INC. and      COMPLAINT**
    DAN S. KAUFMAN,
16                                       Hon. Ruth Bermudez Montenegro
             Defendants.
17                                       **JURY TRIAL DEMANDED**

18  ───────────────────────────
19  SHORELINE BIOSCIENCES, INC.,
                                         **REDACTED VERSION OF
20            Counterclaimant,           DOCUMENT PROPOSED TO BE
                                         FILED UNDER SEAL**
21       v.

22  FATE THERAPEUTICS, INC. and
    WHITEHEAD INSTITUTE FOR
23  BIOMEDICAL RESEARCH,

24            Counterdefendants.

25

26

27

28

ERIC M. ACKER (CA SBN 135805)
EAcker@mofo.com
BRIAN M. KRAMER (CA SBN 212107)
BMKramer@mofo.com
DREW A. HILLIER (CA SBN 337112)
DHillier@mofo.com
WESLEY W. CHEN (CA SBN 329446)
WChen@mofo.com
SARAH J. VANDERVALK (CA SBN 332651)
SVandervalk@mofo.com
JOSE LUIS RAMOS (CA SBN 340711)
LuisRamos@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, California 92130-2040
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Defendant
SHORELINE BIOSCIENCES, INC.

1   Defendant Shoreline Biosciences, Inc. ("Shoreline") hereby submits this

2   Answer and Affirmative Defenses to the Complaint ("Complaint") filed by Fate

3   Therapeutics, Inc. and Whitehead Institute for Biomedical Research, and submits

4   the following counterclaims ("Counterclaims") against Fate Therapeutics, Inc.

5   ("Fate") and Whitehead Institute for Biomedical Research ("Whitehead")

6   (collectively, "Plaintiffs" or "Counterdefendants").  Except as expressly admitted

7   below, Shoreline denies each and every allegation of the Complaint.

8                    **ALLEGED NATURE OF THE ACTION**

9        1.     Shoreline admits that the Complaint purports to set forth an action that

10  arises under the patent laws of the United States.  Shoreline denies that it infringes

11  U.S. Patent Nos. 8,071,369 ("the '369 Patent"), 8,932,856 ("the '856 Patent"),

12  8,951,797 ("the '797 Patent"), 8,940,536 ("the '536 Patent"), 9,169,490 ("the

13  '490 Patent"), 10,457,917 ("the '917 Patent") (collectively, "the Asserted Patents").

14  Shoreline admits that what purport to be copies of the Asserted Patents were

15  attached to the Complaint as Exhibits A, B, C, D, E, and F and respectfully refers

16  the Court to Exhibits A, B, C, D, E, and F for the contents thereof.

17       2.     Shoreline lacks knowledge or information sufficient to form a belief

18  about the truth of the allegations in Paragraph 2 and on that basis denies them.

19       3.     Shoreline lacks knowledge or information sufficient to form a belief

20  about the truth of the allegations in Paragraph 3 and on that basis denies them.  To

21  the extent a further response is required, Shoreline admits that Exhibit G purports to

22  be a Fate press release and respectfully refers the Court to Exhibit G for the

23  contents thereof.

24       4.     Paragraph 4 contains legal conclusions to which no response is

25  required.  To the extent a response is required, Shoreline lacks knowledge or

26  information sufficient to form a belief about the truth of the allegations in

27  Paragraph 4 and on that basis denies them.

28       5.     Shoreline denies the allegations in Paragraph 5.

1

6. The first sentence of Paragraph 6 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in the first sentence of Paragraph 6. Shoreline denies the allegations in the second and third sentences of Paragraph 6.

7. Paragraph 7 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 7 and on that basis denies them.

8. Shoreline lacks sufficient knowledge or information as to the truth of the allegations in the first sentence of Paragraph 8 and on that basis denies them. The second and third sentences of Paragraph 8 contains legal conclusions to which no response is required. To the extent a response to the second sentence of Paragraph 8 is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations and on that basis denies them. To the extent a response to the third sentence of Paragraph 8 is required, Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "helped Shoreline raise" and on that basis denies the allegations in the third sentence. Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "helped Shoreline pursue," in the fourth sentence of Paragraph 8 and on that basis denies the allegations in the fourth sentence. Shoreline denies any remaining allegations.

9. Paragraph 9 contains characterizations and selective quotations, constituting legal argument to which no response is required. To the extent a response is required, Shoreline respectfully refers the Court to Exhibit H for the contents thereof. Shoreline denies any remaining allegations in Paragraph 9.

10. Shoreline denies the allegations in Paragraph 10.

11. Shoreline denies the allegations in Paragraph 11.

12. Based on knowledge available, Shoreline admits that Fate holds itself out as a Delaware corporation with a principal place of business at 12278 Scripps Summit Drive, San Diego, CA 92131.

13. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 13 and on that basis denies them.

14. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 14 and on that basis denies them.

15. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 15 and on that basis denies them.

16. Paragraph 16 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 16 and on that basis denies them.

17. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in the first sentence of Paragraph 17 and on that basis denies them. Based on knowledge available, Shoreline admits that Whitehead holds itself out as a Delaware corporation with an office at 455 Main Street, Cambridge, MA 02142.

18. Shoreline admits that what purport to be copies of the Asserted Patents are attached to the Complaint as Exhibits A, B, C, D, E, and F, and list "Assignee: Whitehead Institute for Biomedical Research." Shoreline respectfully refers the Court to Exhibits A, B, C, D, E, and F for the contents thereof. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 18 and on that basis denies them.

19. Shoreline admits that it is a Delaware corporation. Shoreline denies that its principal place of business is at 11408 Sorrento Valley Road, San Diego, CA 92121.

20.     Shoreline lacks sufficient knowledge or information to form a belief as to Plaintiffs' meaning of "participant," "participated in," and the undefined, capitalized term "Scientific Advisor" in the allegations of Paragraph 20 and on that basis denies them, except admits that Dr. Kaufman is a co-founder and director of Shoreline.  Shoreline denies any remaining allegations in Paragraph 20.

21.     Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 21 and on that basis denies them.

22.     Shoreline denies the allegations in Paragraph 22.

23.     Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 23 and on that basis denies them.

## ALLEGED JURISDICTION AND VENUE

24.     Shoreline admits that the Complaint purports to set forth a claim for patent infringement under 35 U.S.C. § 271.

25.     Shoreline admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).  Shoreline denies that the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

26.     Paragraph 26 contains legal conclusions to which no response is required.  To the extent a response is required, Shoreline does not contest personal jurisdiction only with respect to this action.

27.     Shoreline denies the allegations in Paragraph 27.

28.     Paragraph 28 contains legal conclusions to which no response is required.  To the extent a response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 28 and on that basis denies them.

29.     Paragraph 29 contains legal conclusions to which no response is required.  To the extent a response is required, Shoreline does not contest that venue is proper in this District.

30.    Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "adult," and on that basis denies the allegations in the first sentence of Paragraph 30. Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "beneficial properties" and "associated drawbacks," and on that basis denies the allegations in the second sentence of Paragraph 30. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in the third and fourth sentences of Paragraph 30, and on that basis denies them.

31.    Shoreline admits the allegation in the first sentence of Paragraph 31. Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "most critical" and on that basis denies the allegations in the second sentence of Paragraph 31. Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that basis denies the allegations in the third sentence of Paragraph 31. Shoreline admits the allegation in the fourth sentence of Paragraph 31. Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in the fifth sentence of Paragraph 31 and on that basis denies them. Shoreline denies the allegations in the sixth sentence of Paragraph 31.

32.    Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 32 and on that basis denies them.

33.    Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 33 and on that basis denies them.

34.    Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 34 and on that basis denies them.

35.    Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 35 and on that basis denies them.

36.     Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 36 and on that basis denies them.

37.     Shoreline admits that Dr. Kaufman and Dr. Xanthopoulos had one or more discussions after December 6, 2019.  Shoreline denies the remaining allegations in Paragraph 37.

38.     Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 38 and on that basis denies them.

39.     Shoreline denies the allegations in the first sentence of Paragraph 39.  Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in the second sentence of Paragraph 39 and on that basis denies them.

40.     Paragraph 40 contains legal conclusions to which no response is required.  To the extent a response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 40 and on that basis denies them.

41.     Paragraph 41 contains legal conclusions to which no response is required.  To the extent a response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 41 and on that basis denies them.

42.     Paragraph 42 contains characterizations and selective quotations, constituting legal argument to which no response is required.  To the extent a response is required, Shoreline respectfully refers the Court to Exhibit I for the contents thereof.  Shoreline denies any remaining allegations contained in Paragraph 42.

43.     Paragraph 43 contains characterizations and selective quotations, constituting legal argument to which no response is required.  To the extent a response is required, Shoreline respectfully refers the Court to Exhibit I for the contents thereof.  Shoreline denies any remaining allegations in Paragraph 43.

1    44.    Paragraph 44 contains legal conclusions to which no response is

2    required.  To the extent a response is required, Shoreline lacks sufficient knowledge

3    or information to form a belief about the truth of the allegations in Paragraph 44

4    and on that basis denies them.

5    45.    Paragraph 45 contains characterizations and selective quotations,

6    constituting legal argument to which no response is required.  To the extent a

7    response is required, Shoreline respectfully refers the Court to the alleged waiver

8    request for the contents thereof.  To the extent a further response is required,

9    Shoreline lacks sufficient knowledge or information to form a belief about the truth

10   of the allegations in Paragraph 45 and on that basis denies them.

11   46.    Shoreline admits that Shoreline develops natural killer immunotherapy

12   cells derived from iPSCs that involve technology that is distinct from the

13   technology in the Asserted Patents.  To the extent a further response is required,

14   Shoreline lacks sufficient knowledge or information to form a belief about the truth

15   of the remaining allegations in the first and second sentences of Paragraph 46 and

16   on that basis denies them.  Shoreline lacks sufficient knowledge or information to

17   form a belief as to the remaining allegations in the third sentence of Paragraph 46

18   because Shoreline and Dr. Kaufman did not attempt to make iPSCs and on that

19   basis denies them.  Shoreline denies that it infringes the Asserted Patents.

20   Shoreline denies any remaining allegations in Paragraph 46.

21   47.    Shoreline denies the allegations in Paragraph 47.

22   48.    Paragraph 48 contains legal conclusions to which no response is

23   required.  To the extent a response is required, Shoreline lacks sufficient knowledge

24   or information to form a belief about the truth of the allegations in Paragraph 48

25   and on that basis denies them.

26   49.    Paragraph 49 contains legal conclusions to which no response is

27   required.  To the extent a response is required, Shoreline lacks sufficient knowledge

28

or information to form a belief about the truth of the allegations in Paragraph 49 and on that basis denies them.

## THE ASSERTED PATENTS

50.     Shoreline admits that what purport to be copies of the Asserted Patents attached to the Complaint as Exhibits A, B, C, D, E, and F, list "Inventors: Rudolf Jaenisch, Brookline, MA (US); Konrad Hochedlinger, Cambridge, MA (US)" and respectfully refers the Court to Exhibits A, B, C, D, E, and F for the contents thereof.  Shoreline lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 50 and on that basis denies them.

51.     Shoreline denies the allegations in Paragraph 51.

52.     Shoreline admits that the text quoted in Paragraph 52 is found within what purports to be a copy of the '369 Patent attached to the Complaint as Exhibit A and respectfully refers the Court to Exhibit A for the contents thereof.

53.     Shoreline admits that the text quoted in Paragraph 53 is found within what purports to be a copy of the '856 Patent attached to the Complaint as Exhibit B and respectfully refers the Court to Exhibit B for the contents thereof.

54.     Shoreline admits that the text quoted in Paragraph 54 is found within what purports to be a copy of the '797 Patent attached to the Complaint as Exhibit C and respectfully refers the Court to Exhibit C for the contents thereof.

55.     Shoreline admits that the text quoted in Paragraph 55 is found within what purports to be a copy of the '536 Patent attached to the Complaint as Exhibit D and respectfully refers the Court to Exhibit D for the contents thereof.

56.     Shoreline admits that the text quoted in Paragraph 56 is found within what purports to be a copy of the '490 Patent attached to the Complaint as Exhibit E and respectfully refers the Court to Exhibit E for the contents thereof.

57.     Shoreline admits that the text quoted in Paragraph 57 is found within what purports to be a copy of the '917 Patent attached to the Complaint as Exhibit F and respectfully refers the Court to Exhibit F for the contents thereof.

58.    Paragraph 58 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline admits that what purport to be copies of the Asserted Patents attached to the Complaint as Exhibits A, B, C, D, E, and F, list "Provisional application No. 60/525,612 filed on Nov. 26, 2003," and respectfully refers the Court to Exhibits A, B, C, D, E, and F for the contents thereof. Shoreline lacks sufficient knowledge or information to form a belief about the truth of any remaining allegations in Paragraph 58 and on that basis denies them.

59.    Paragraph 59 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline respectfully refers the Court to the Asserted Patents and their prosecution histories for the contents thereof. Shoreline denies any remaining allegations in Paragraph 59.

60.    Paragraph 60 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in Paragraph 60.

61.    Paragraph 61 contains legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in Paragraph 61 at least because 35 U.S.C. § 156(f)—which merely provides the meaning for the terms "product," "drug product," "major health or environmental effects test," "section 351," "section 503, 505, 512, or 515," "informal hearing," "patent," and "date of enactment"—does not itself determine eligibility for a patent term extension as Fate alleges.

## DEFENDANTS' ALLEGED ACTIVITIES

62.    Shoreline denies the allegations in Paragraph 62.

63.    Shoreline denies the allegations in Paragraph 63.

64.    Shoreline denies the allegations in Paragraph 64.

65.    Shoreline denies the allegations in Paragraph 65.

# FIRST CLAIM FOR RELIEF

## (Alleged Infringement of the '369 Patent)

66. Shoreline incorporates by reference its answers to Paragraphs 1-65 as if fully set forth herein.

67. Shoreline admits that the Complaint purports to set forth a claim for patent infringement under certain provisions of 35 U.S.C. § 271. Shoreline denies any remaining allegations in Paragraph 67.

68. Shoreline denies the allegations in Paragraph 68.

69. Shoreline denies the allegations in Paragraph 69.

70. Shoreline admits that the '369 Patent recites a first claim and respectfully refers the Court to the '369 Patent and its prosecution history for the full and complete contents thereof. Shoreline denies any remaining allegations in Paragraph 70.

71. Shoreline denies the allegations contained in the first sentence of Paragraph 71. The second sentence of Paragraph 71 contains characterizations and appears to contain selective excerpts from an unidentified document, constituting legal argument to which no response is required. To the extent a response is required, Shoreline admits that it does not modify somatic cells to generate iPSCs. To the extent a further response is required, Shoreline denies any remaining allegations in Paragraph 71.

72. Shoreline denies the allegations in Paragraph 72.

73. Shoreline denies the allegations in Paragraph 73.

74. Shoreline denies the allegations in Paragraph 74.

75. Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "most critical" and on that basis denies the allegations in the first sentence of Paragraph 75. Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that basis denies the allegations in the second sentence of Paragraph 75. Shoreline lacks

sufficient knowledge or information to form a belief about the truth of the allegations in the third sentence of Paragraph 75 and on that basis denies them. Shoreline denies the allegations in the fourth sentence of Paragraph 75.

76.     Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 76 and on that basis denies them.

77.     Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 77 and on that basis denies them.

78.     Shoreline denies the allegations in Paragraph 78.

79.     Shoreline denies the allegations in Paragraph 79.

80.     Shoreline denies the allegations in the first sentence of Paragraph 80. The second and third sentences of Paragraph 80 contains characterizations and selective quotations, constituting legal argument to which no response is required. To the extent a response to the second and third sentences is required, Shoreline respectfully refers the Court to Exhibit J and K for the contents thereof. Shoreline denies the allegations in the fourth sentence of Paragraph 80. Shoreline denies any remaining allegations in Paragraph 80.

81.     Shoreline denies the allegations in Paragraph 81.

82.     The allegations in Paragraph 82 contain legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in Paragraph 82 to the extent they attempt to allege that Fate's allegations of infringement by Shoreline are not subject to the safe harbor of 35 U.S.C. § 271(e). To the extent a further response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 82 and on that basis denies them.

83.     Shoreline denies the allegations in Paragraph 83.

84.     Shoreline denies the allegations in Paragraph 84.

85.     Shoreline denies the allegations in Paragraph 85.

86.     Shoreline denies the allegations in Paragraph 86.

1    87.    Shoreline denies the allegations in Paragraph 87.

2    88.    Shoreline denies the allegations in Paragraph 88.

3    89.    Shoreline denies the allegations in Paragraph 89.

4    90.    Shoreline denies the allegations in Paragraph 90.

5    91.    Shoreline denies the allegations in Paragraph 91.

6    92.    Shoreline denies the allegations in Paragraph 92.

7                    **SECOND CLAIM FOR RELIEF**

8             **(Alleged Infringement of the '856 Patent)**

9    93.    Shoreline incorporates by reference its answers to Paragraphs 1-92 as

10   if fully set forth herein.

11   94.    Shoreline admits that the Complaint purports to set forth a claim for

12   patent infringement under certain provisions of 35 U.S.C. § 271.  Shoreline denies

13   any remaining allegations in Paragraph 94.

14   95.    Shoreline denies the allegations in Paragraph 95.

15   96.    Shoreline denies the allegations in Paragraph 96.

16   97.    Shoreline admits that the '856 Patent recites a first claim and

17   respectfully refers the Court to the '856 Patent and its prosecution history for the

18   full and complete contents thereof.  Shoreline denies any remaining allegations in

19   Paragraph 97.

20   98.    Shoreline denies the allegations contained in the first sentence of

21   Paragraph 98.  The second sentence of Paragraph 98 contains characterizations and

22   appears to contain selective excerpts from an unidentified document, constituting

23   legal argument to which no response is required.  To the extent a response is

24   required, Shoreline admits that it does not modify somatic cells to generate iPSCs.

25   To the extent a further response is required, Shoreline denies any remaining

26   allegations in Paragraph 98.

27   99.    Shoreline denies the allegations in Paragraph 99.

28   100.   Shoreline denies the allegations in Paragraph 100.

1    101.   Shoreline denies the allegations in Paragraph 101.

2    102.   Shoreline lacks sufficient knowledge or information as to Plaintiffs'

3    meaning of "most critical" and on that basis denies the allegations in the first

4    sentence of Paragraph 102.  Shoreline lacks sufficient knowledge or information as

5    to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that

6    basis denies the allegations in the second sentence of Paragraph 102.  Shoreline

7    lacks sufficient knowledge or information to form a belief about the truth of the

8    allegations in the third sentence of Paragraph 102 and on that basis denies them.

9    Shoreline denies the allegations in the fourth sentence of Paragraph 102.

10   103.   Shoreline lacks sufficient knowledge or information to form a belief

11   about the truth of the allegations in Paragraph 103 and on that basis denies them.

12   104.   Shoreline lacks sufficient knowledge or information to form a belief

13   about the truth of the allegations in Paragraph 104 and on that basis denies them.

14   105.   Shoreline denies the allegations in Paragraph 105.

15   106.   Shoreline denies the allegations in Paragraph 106.

16   107.   Shoreline denies the allegations in the first sentence of Paragraph 107.

17   The second and third sentences of Paragraph 107 contains characterizations and

18   selective quotations, constituting legal argument to which no response is required.

19   To the extent a response to the second and third sentences is required, Shoreline

20   respectfully refers the Court to Exhibit J and K for the contents thereof.  Shoreline

21   denies the allegations in the fourth sentence of Paragraph 107.  Shoreline denies

22   any remaining allegations in Paragraph 107.

23   108.   Shoreline denies the allegations in Paragraph 108.

24   109.   Shoreline denies the allegations in Paragraph 109.

25   110.   Shoreline denies the allegations in Paragraph 110.

26   111.   Shoreline denies the allegations in Paragraph 111.

27   112.   Shoreline denies the allegations in Paragraph 112.

28

113.   The allegations in Paragraph 113 contain legal conclusions to which no response is required.  To the extent a response is required, Shoreline denies the allegations in Paragraph 113 to the extent they attempt to allege that Fate's allegations of infringement by Shoreline are not subject to the safe harbor of 35 U.S.C. § 271(e).  To the extent a further response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 113 and on that basis denies them.

114.   Shoreline denies the allegations in Paragraph 114.

115.   Shoreline denies the allegations in Paragraph 115.

116.   Shoreline denies the allegations in Paragraph 116.

117.   Shoreline denies the allegations in Paragraph 117.

118.   Shoreline denies the allegations in Paragraph 118.

119.   Shoreline denies the allegations in Paragraph 119.

120.   Shoreline denies the allegations in Paragraph 120.

121.   Shoreline denies the allegations in Paragraph 121.

122.   Shoreline denies the allegations in Paragraph 122.

## THIRD CLAIM FOR RELIEF

### (Alleged Infringement of the '797 Patent)

123.   Shoreline incorporates by reference its answers to Paragraphs 1-122 as if fully set forth herein.

124.   Shoreline admits that the Complaint purports to set forth a claim for patent infringement under certain provisions of 35 U.S.C. § 271.  Shoreline denies any remaining allegations in Paragraph 124.

125.   Shoreline denies the allegations in Paragraph 125.

126.   Shoreline denies the allegations in Paragraph 126.

127.   Shoreline admits that the '797 Patent recites a first claim and respectfully refers the Court to the '797 Patent and its prosecution history for the

full and complete contents thereof.  Shoreline denies any remaining allegations in Paragraph 127.

128.   Shoreline denies the allegations contained in the first sentence of Paragraph 128.  The second sentence of Paragraph 128 contains characterizations and appears to contain selective excerpts from an unidentified document, constituting legal argument to which no response is required.  To the extent a response is required, Shoreline admits that it does not modify somatic cells to generate iPSCs.  To the extent a further response is required, Shoreline denies any remaining allegations in Paragraph 128.

129.   Shoreline denies the allegations in Paragraph 129.

130.   Shoreline denies the allegations in Paragraph 130.

131.   Shoreline denies the allegations in Paragraph 131.

132.   Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "most critical" and on that basis denies the allegations in the first sentence of Paragraph 132.  Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that basis denies the allegations in the second sentence of Paragraph 132.  Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in the third sentence of Paragraph 132 and on that basis denies them. Shoreline denies the allegations in the fourth sentence of Paragraph 132.

133.   Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 133 and on that basis denies them.

134.   Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 134 and on that basis denies them.

135.   Shoreline denies the allegations in Paragraph 135.

136.   Shoreline denies the allegations in Paragraph 136.

137.   Shoreline denies the allegations in the first sentence of Paragraph 137. The second and third sentences of Paragraph 137 contains characterizations and

selective quotations, constituting legal argument to which no response is required. To the extent a response to the second and third sentences is required, Shoreline respectfully refers the Court to Exhibit J and K for the contents thereof. Shoreline denies any remaining allegations in Paragraph 137.

138. Shoreline denies the allegations in Paragraph 138.

139. The allegations in Paragraph 139 contain legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in Paragraph 139 to the extent they attempt to allege that Fate's allegations of infringement by Shoreline are not subject to the safe harbor of 35 U.S.C. § 271(e). To the extent a further response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 139 and on that basis denies them.

140. Shoreline denies the allegations in Paragraph 140.

141. Shoreline denies the allegations in Paragraph 141.

142. Shoreline denies the allegations in Paragraph 142.

143. Shoreline denies the allegations in Paragraph 143.

144. Shoreline denies the allegations in Paragraph 144.

145. Shoreline denies the allegations in Paragraph 145.

146. Shoreline denies the allegations in Paragraph 146.

147. Shoreline denies the allegations in Paragraph 147.

148. Shoreline denies the allegations in Paragraph 148.

149. Shoreline denies the allegations in Paragraph 149.

## FOURTH CLAIM FOR RELIEF

### (Alleged Infringement of the '536 Patent)

150. Shoreline incorporates by reference its answers to Paragraphs 1-149 as if fully set forth herein.

151.   Shoreline admits that the Complaint purports to set forth a claim for patent infringement under certain provisions of 35 U.S.C. § 271.  Shoreline denies any remaining allegations in Paragraph 151.

152.   Shoreline denies the allegations in Paragraph 152.

153.   Shoreline denies the allegations in Paragraph 153.

154.   Shoreline admits that the '536 Patent recites a first claim and respectfully refers the Court to the '536 Patent and its prosecution history for the full and complete contents thereof.  Shoreline denies any remaining allegations in Paragraph 154.

155.   Shoreline denies the allegations contained in the first sentence of Paragraph 155.  The second sentence of Paragraph 155 contains characterizations and appears to contain selective excerpts from an unidentified document, constituting legal argument to which no response is required.  To the extent a response is required, Shoreline admits that it does not modify somatic cells to generate iPSCs.  To the extent a further response is required, Shoreline denies any remaining allegations in Paragraph 155.

156.   Shoreline denies the allegations in Paragraph 156.

157.   Shoreline denies the allegations in Paragraph 157.

158.   Shoreline denies the allegations in Paragraph 158.

159.   Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "most critical" and on that basis denies the allegations in the first sentence of Paragraph 159.  Shoreline lacks sufficient knowledge or information as to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that basis denies the allegations in the second sentence of Paragraph 159.  Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in the third sentence of Paragraph 159 and on that basis denies them.  Shoreline denies the allegations in the fourth sentence of Paragraph 159.

160.    Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 160 and on that basis denies them.

161.    Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 161 and on that basis denies them.

162.    Shoreline denies the allegations in Paragraph 162.

163.    Shoreline denies the allegations in Paragraph 163.

164.    Shoreline denies the allegations in the first sentence of Paragraph 164. The second and third sentences of Paragraph 164 contains characterizations and selective quotations, constituting legal argument to which no response is required. To the extent a response to the second and third sentences is required, Shoreline respectfully refers the Court to Exhibit J and K for the contents thereof. Shoreline denies any remaining allegations in Paragraph 164.

165.    Shoreline denies the allegations in Paragraph 165.

166.    Shoreline denies the allegations in Paragraph 166.

167.    Shoreline denies the allegations in Paragraph 167.

168.    Shoreline denies the allegations in Paragraph 168.

169.    Shoreline denies the allegations in Paragraph 169.

170.    The allegations in Paragraph 170 contain legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in Paragraph 170 to the extent they attempt to allege that Fate's allegations of infringement by Shoreline are not subject to the safe harbor of 35 U.S.C. § 271(e). To the extent a further response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 170 and on that basis denies them.

171.    Shoreline denies the allegations in Paragraph 171.

172.    Shoreline denies the allegations in Paragraph 172.

173.    Shoreline denies the allegations in Paragraph 173.

174.    Shoreline denies the allegations in Paragraph 174.

175. Shoreline denies the allegations in Paragraph 175.

176. Shoreline denies the allegations in Paragraph 176.

177. Shoreline denies the allegations in Paragraph 177.

178. Shoreline denies the allegations in Paragraph 178.

179. Shoreline denies the allegations in Paragraph 179.

## FIFTH CLAIM FOR RELIEF

### (Alleged Infringement of the '490 Patent)

180. Shoreline incorporates by reference its answers to Paragraphs 1-179 as if fully set forth herein.

181. Shoreline admits that the Complaint purports to set forth a claim for patent infringement under certain provisions of 35 U.S.C. § 271. Shoreline denies any remaining allegations in Paragraph 181.

182. Shoreline denies the allegations in Paragraph 182.

183. Shoreline denies the allegations in Paragraph 183.

184. Shoreline admits that the '490 Patent recites a first claim and respectfully refers the Court to the '490 Patent and its prosecution history for the full and complete contents thereof. Shoreline denies any remaining allegations in Paragraph 184.

185. Shoreline denies the allegations contained in the first sentence of Paragraph 185. The second sentence of Paragraph 185 contains characterizations and appears to contain selective excerpts from an unidentified document, constituting legal argument to which no response is required. To the extent a response is required, Shoreline admits that it does not modify somatic cells to generate iPSCs. To the extent a further response is required, Shoreline denies any remaining allegations in Paragraph 185.

186. Shoreline denies the allegations in Paragraph 186.

187. Shoreline denies the allegations in Paragraph 187.

188. Shoreline denies the allegations in Paragraph 188.

SHORELINE ANSWER AND COUNTERCLAIMS
CASE NO. 3:22-CV-00676-RBM-MSB

189.	Shoreline lacks sufficient knowledge or information as to Plaintiffs'
meaning of "most critical" and on that basis denies the allegations in the first
sentence of Paragraph 189. Shoreline lacks sufficient knowledge or information as
to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that
basis denies the allegations in the second sentence of Paragraph 189. Shoreline
lacks sufficient knowledge or information to form a belief about the truth of the
allegations in the third sentence of Paragraph 189 and on that basis denies them.
Shoreline denies the allegations in the fourth sentence of Paragraph 189

190.	Shoreline lacks sufficient knowledge or information to form a belief
about the truth of the allegations in Paragraph 190 and on that basis denies them.

191.	Shoreline lacks sufficient knowledge or information to form a belief
about the truth of the allegations in Paragraph 191 and on that basis denies them.

192.	Shoreline denies the allegations in Paragraph 192.

193.	Shoreline denies the allegations in Paragraph 193.

194.	Shoreline denies the allegations in the first sentence of Paragraph 194.
The second and third sentences of Paragraph 194 contains characterizations and
selective quotations, constituting legal argument to which no response is required.
To the extent a response to the second and third sentences is required, Shoreline
respectfully refers the Court to Exhibit J and K for the contents thereof. Shoreline
denies any remaining allegations in Paragraph 194.

195.	Shoreline denies the allegations in Paragraph 195.

196.	The allegations in Paragraph 196 contain legal conclusions to which
no response is required. To the extent a response is required, Shoreline denies the
allegations in Paragraph 196 to the extent they attempt to allege that Fate's
allegations of infringement by Shoreline are not subject to the safe harbor of 35
U.S.C. § 271(e). To the extent a further response is required, Shoreline lacks
sufficient knowledge or information to form a belief about the truth of the
allegations in Paragraph 196 and on that basis denies them.

197.    Shoreline denies the allegations in Paragraph 197.

198.    Shoreline denies the allegations in Paragraph 198.

199.    Shoreline denies the allegations in Paragraph 199.

200.    Shoreline denies the allegations in Paragraph 200.

201.    Shoreline denies the allegations in Paragraph 201.

202.    Shoreline denies the allegations in Paragraph 202.

203.    Shoreline denies the allegations in Paragraph 203.

204.    Shoreline denies the allegations in Paragraph 204.

205.    Shoreline denies the allegations in Paragraph 205.

206.    Shoreline denies the allegations in Paragraph 206.

## SIXTH CLAIM FOR RELIEF

### (Alleged Infringement of the '917 Patent)

207.    Shoreline incorporates by reference its answers to Paragraphs 1-206 as if fully set forth herein.

208.    Shoreline admits that the Complaint purports to set forth a claim for patent infringement under certain provisions of 35 U.S.C. § 271. Shoreline denies any remaining allegations in Paragraph 208.

209.    Shoreline denies the allegations in Paragraph 209.

210.    Shoreline denies the allegations in Paragraph 210.

211.    Shoreline admits that the '917 Patent recites a first claim and respectfully refers the Court to the '917 Patent and its prosecution history for the full and complete contents thereof. Shoreline denies any remaining allegations in Paragraph 211.

212.    Shoreline denies the allegations contained in the first sentence of Paragraph 212. The second sentence of Paragraph 212 contains characterizations and appears to contain selective excerpts from an unidentified document, constituting legal argument to which no response is required. To the extent a response is required, Shoreline admits that it does not modify somatic cells to

1  generate iPSCs.  To the extent a further response is required, Shoreline denies any
2  remaining allegations in Paragraph 212.

3      213.   Shoreline denies the allegations in Paragraph 213.

4      214.   Shoreline denies the allegations in Paragraph 214.

5      215.   Shoreline denies the allegations in Paragraph 215.

6      216.   Shoreline lacks sufficient knowledge or information as to Plaintiffs'
7  meaning of "most critical" and on that basis denies the allegations in the first
8  sentence of Paragraph 216.  Shoreline lacks sufficient knowledge or information as
9  to Plaintiffs' meaning of "master regulator" or "playing an integral role" and on that
10 basis denies the allegations in the second sentence of Paragraph 216.  Shoreline
11 lacks sufficient knowledge or information to form a belief about the truth of the
12 allegations in the third sentence of Paragraph 216 and on that basis denies them.
13 Shoreline denies the allegations in the fourth sentence of Paragraph 216.

14     217.   Shoreline lacks sufficient knowledge or information to form a belief
15 about the truth of the allegations in Paragraph 217 and on that basis denies them.

16     218.   Shoreline lacks sufficient knowledge or information to form a belief
17 about the truth of the allegations in Paragraph 218 and on that basis denies them.

18     219.   Shoreline denies the allegations in Paragraph 219.

19     220.   Shoreline denies the allegations in Paragraph 220.

20     221.   Shoreline denies the allegations in the first sentence of Paragraph 221.
21 The second and third sentences of Paragraph 221 contains characterizations and
22 selective quotations, constituting legal argument to which no response is required.
23 To the extent a response to the second and third sentences is required, Shoreline
24 respectfully refers the Court to Exhibit J and K for the contents thereof.  Shoreline
25 denies any remaining allegations in Paragraph 221.

26     222.   Shoreline denies the allegations in Paragraph 222.

27     223.   Shoreline denies the allegations in Paragraph 223.

28     224.   Shoreline denies the allegations in Paragraph 224.

225. Shoreline denies the allegations in Paragraph 225.

226. Shoreline denies the allegations in Paragraph 226.

227. The allegations in Paragraph 227 contain legal conclusions to which no response is required. To the extent a response is required, Shoreline denies the allegations in Paragraph 227 to the extent they attempt to allege that Fate's allegations of infringement by Shoreline are not subject to the safe harbor of 35 U.S.C. § 271(e). To the extent a further response is required, Shoreline lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 227 and on that basis denies them.

228. Shoreline denies the allegations in Paragraph 228.

229. Shoreline denies the allegations in Paragraph 229.

230. Shoreline denies the allegations in Paragraph 230.

231. Shoreline denies the allegations in Paragraph 231.

232. Shoreline denies the allegations in Paragraph 232.

233. Shoreline denies the allegations in Paragraph 233.

234. Shoreline denies the allegations in Paragraph 234.

235. Shoreline denies the allegations in Paragraph 235.

236. Shoreline denies the allegations in Paragraph 236.

## RESPONSE TO PRAYER FOR RELIEF

Shoreline denies all the allegations in the Complaint not expressly admitted herein, including all headings and allegations in the Prayer for Relief and denies that Plaintiffs are entitled to any relief. In particular, Shoreline prays that this Court will enter judgment in Shoreline's favor with Plaintiffs receiving no relief; will award Shoreline its fees and costs defending the Complaint; and will order such other relief to Shoreline as the Court deems appropriate.

## RESPONSE TO JURY DEMAND

Shoreline states that Plaintiffs' demand for a jury trial does not require an admission or denial.

## AFFIRMATIVE DEFENSES

Shoreline asserts the following affirmative defenses, without assuming the burden of proof for any defense. Headings are included for convenience only and do not limit Shoreline's defenses. Shoreline reserves its right to assert additional defenses as this action proceeds up to and including the time of trial and any appeal thereof and hereby reserves its right to amend its Answer to assert any such defenses.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Unclean Hands)

Each and every allegation in the Complaint is barred, in whole or in part, by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

Each and every allegation in the Complaint is barred, in whole or in part, by Plaintiffs' failure to exercise reasonable care and diligence in mitigating its damages, if any.

### FOURTH AFFIRMATIVE DEFENSE
### (Marking)

Plaintiffs' claims for relief and prayer for damages, if any, for patent infringement are limited under 35 U.S.C. § 287.

### FIFTH AFFIRMATIVE DEFENSE
### (Limitation on Recovery of Costs)

Plaintiffs are precluded from seeking recovery of costs, if any, for its patent infringement claims by 35 U.S.C. § 288.

## SIXTH AFFIRMATIVE DEFENSE

### (Non-Infringement of Patents)

Plaintiffs' claims for patent infringement are barred, in whole or in part, because Shoreline has not infringed, literally or under the doctrine of equivalents, directly, by inducement, or by any other way, any valid and enforceable claim of the Asserted Patents.

## SEVENTH AFFIRMATIVE DEFENSE

### (Safe Harbor)

Plaintiffs' claims for patent infringement are barred, in whole or in part, because Shoreline's accused conduct does not constitute acts of infringement under 35 U.S.C. § 271(e)(1) with respect to the Asserted Patents.

## EIGHTH AFFIRMATIVE DEFENSE

### (Invalidity of Patents)

Plaintiffs' claims for patent infringement are barred, in whole or in part, because one or more claims of the Asserted Patents is invalid for failure to comply with one or more of the conditions for patentability in Title 35 of the United States Code, including 35 U.S.C. §§ 102, 103, and 112, as well as other judicially created bases for patent invalidity.

## NINTH AFFIRMATIVE DEFENSE

### (No Grounds For Attorneys' Fees)

Plaintiffs' prayer for attorneys' fees for its claims for patent infringement is barred to the extent Plaintiff does not satisfy the requirements of 35 U.S.C. § 285.

## TENTH AFFIRMATIVE DEFENSE

### (Adequate Remedy at Law)

Plaintiffs have an adequate remedy at law and no adequate basis exists for the grant of injunctive relief.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver/Estoppel/Acquiescence)

Plaintiffs' requested relief is barred, in whole or in part, by the doctrines of waiver, estoppel, and/or acquiescence, including, but not limited to, the doctrine of prosecution history estoppel arising from the patentee's actions, representations, and/or conduct before the United States Patent and Trademark Office during prosecution of the Asserted Patents.

## TWELTH AFFIRMATIVE DEFENSE

### (No Willful Infringement)

Plaintiffs' requested relief is barred, in whole or in part, because Shoreline has not intentionally, willfully, or deliberately infringed nor caused to be infringed, either literally or under the doctrine of equivalents, any valid and enforceable claim of the Asserted Patents.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

Plaintiffs' claims for patent infringement are barred, in whole or in part, because Fate and Whitehead lack standing to assert the Asserted Patents.

## DEMAND FOR JURY TRIAL

Shoreline hereby demands trial by jury on all issues and claims so triable.

///
///
///
///
///
///
///
///
///

26

# COUNTERCLAIMS

Defendant-Counterclaimant Shoreline Biosciences, Inc. ("Shoreline") hereby files these Counterclaims against Plaintiffs-Counterclaim-Defendants Fate Therapeutics, Inc. and Whitehead Institute for Biomedical Research ("Plaintiffs") and alleges as follows:

## NATURE OF THE ACTION

1.     Shoreline brings these Counterclaims to prevent Plaintiffs from asserting invalid patents and maintaining unfounded claims of patent infringement against Shoreline.

2.     This is an action for declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 8,071,369 ("the '369 Patent"), 8,932,856 ("the '856 Patent"), 8,951,797 ("the '797 Patent"), 8,940,536 ("the '536 Patent"), 9,169,490 ("the '490 Patent"), 10,457,917 ("the '917 Patent") (collectively, "the Asserted Patents"), and protection of Shoreline's acts under the Safe Harbor provision, 35 U.S.C. § 271(e)(1).

## PARTIES

3.     Shoreline is a Delaware corporation with its principal place of business at 10220 Sorrento Valley Road, San Diego, California 92121.

4.     Based on information presently available, Plaintiff Fate Therapeutics, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 12278 Scripps Summit Drive, San Diego, California 92131.

5.     Based on information presently available, Plaintiff Whitehead Institute for Biomedical Research is a Delaware corporation, with a principal office at 455 Main Street, Cambridge, Massachusetts 02142.

## JURISDICTION AND VENUE

6.     These Counterclaims arise under federal statutory law, including 35 U.S.C. §§ 100 *et seq.*, 271 *et seq.*, and 28 U.S.C. §§ 2201 and 2202.

Accordingly, a federal district court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and/or 1338(a).

7. Venue is proper in this District because, among other reasons, Plaintiffs sued Shoreline in this judicial district for infringing the Asserted Patents, which are the subject of Shoreline's Counterclaim.

8. Personal jurisdiction is proper because, inter alia, Plaintiffs have sued Shoreline in this judicial district.

## FACTUAL BACKGROUND
### (Common to All Counts)

**A. Shoreline's Next Generation Cancer Treatment**

9. Shoreline is dedicated to developing a treatment for cancer.

10. To do that, Shoreline is working to develop natural killer ("NK") cells that are derived from induced pluripotent stem cells ("iPSCs").

11. As detailed below, Shoreline does not generate iPSCs, induce any other entity to generate iPSCs, or use any composition claimed by the Asserted Patents.

12. Shoreline has no need to generate iPSCs from somatic cells because Shoreline can (and did) purchase iPSCs from the National Institute of Neurological Disorders and Strokes ("NINDS") – a unit of the National Institute of Health ("NIH") – via a program developed by the NIH to spur advances in scientific research using iPSCs. These iPSCs were developed in the United States by a third party, cost $5,000, and are available to any company interested in using iPSCs for scientific research.

13. After purchasing iPSC's from NIH, Shoreline differentiates the iPSCs into NK cells designed to target and destroy cancer cells.

14. Through iPSC differentiation methods and genetic reprogramming of the IL-15/CISH pathway, Shoreline is developing a line of NK cells that live longer and fight cancer better than other technology. The technology to reprogram the IL-

15/CISH pathway was licensed by Shoreline from the University of California, San Diego ("UCSD").

15.    Because of the promising future of Shoreline's technology, Shoreline has attracted a number of sophisticated investors and development partners.

16.    But Shoreline's activities have also drawn the attention of Fate.

17.    Fate was incorporated in 2007 and has been a publicly traded company since October 2013, but it has failed to date to obtain United States Food and Drug Administration ("FDA") approval for a NK cell for treating cancer.

18.    Shoreline's NK cells are distinct from Fate's non-FDA-approved technology.

19.    Fate and Whitehead sued Shoreline for patent infringement to obtain a permanent injunction to end Shoreline's research and development of iPSC-derived NK cells.

20.    Plaintiffs brought suit even though they cannot offer cancer patients a FDA-approved NK cell.

21.    In other words, Plaintiffs want this Court to put a stop to Shoreline's efforts to make its potential cancer treatment a reality.

22.    If Shoreline succeeds in achieving its goal of bringing its cancer treatment to market, however, fewer patients will die and patients will benefit from a better treatment than any currently available.

23.    Accordingly, Shoreline has been compelled to divert its resources that should be devoted to researching and developing superior NK cells to defending itself against Plaintiffs' meritless suit.

24.    Therefore, Shoreline brings these Counterclaims asking the Court to deliver a just result in favor of Shoreline so that its life-saving work can continue.

**B.    Technical Background**

25.    iPSCs are pluripotent stem cells that are reprogrammed from a somatic cell. A somatic cell is a matured cell that has limited potential to turn into a

different type of cell.  Most somatic cells are either terminally differentiated (meaning they cannot differentiate into any other type of cell) or can only differentiate to one tissue type.

26.    Somatic cells are obtained from different organs of the body.  Somatic cells that are isolated directly from an animal or human are called primary somatic cells.

27.    A pluripotent cell can mature or differentiate into all cell types, i.e., cells that can arise from all three germ layers (endoderm, mesoderm, and ectoderm).

28.    Some somatic cells, such as adult stem cells, are multipotent.

29.    A multipotent cell is in an intermediate differentiation state (less differentiated than terminal differentiation, but more differentiated than pluripotency).

30.    A multipotent cell can differentiate to some, but not all cell types.

31.    iPSCs are renewable cells that can be engineered to generate cell therapies or potential organ transplantations for broad patient access.

32.    iPSCs do not exist naturally.

33.    iPSCs are generated in culture from somatic cells through the introduction of reprogramming factors that transform a somatic cell into a pluripotent state.

34.    Pluripotency can occur naturally only in embryonic stem cells.

35.    In 2007, a scientist named Shinya Yamanaka published the seminal paper on iPSC reprogramming of a somatic cell.  **Ex. A**, 2007 Yamanaka et al. publication titled "Induction of Pluripotent Stem Cells from Adult Human Fibroblasts by Defined Factors."

36.    Dr. Yamanaka demonstrated that transducing somatic cells with four reprogramming factors (Oct3/4, Sox2, Klf4, and c-Myc) ("Yamanaka Factors") generated iPSCs. *Id.*

37.     Dr. Yamanaka won the Nobel Prize in Physiology or Medicine in 2012 for his scientific discovery.

38.     The Yamanaka Factors that Dr. Yamanaka demonstrated can also be delivered into cells via various means, for example, by transfecting cells with DNA plasmids.

39.     The combination and introduction of *multiple* reprogramming factors is necessary for reprogramming a somatic cell to an iPSC.

40.     A somatic cell cannot be reprogrammed to an iPSC or a pluripotent state by using a single factor alone such as OCT4.

41.     Somatic cells can be reprogrammed into iPSCs without using exogenous OCT4. **Ex. B**, 2019 Velychko et. al publication entitled "Excluding Oct4 from Yamanaka Cocktail Unleashes the Developmental Potential of iPSCs" at 737 ("Here, we show that the combination of Sox2, Klf4, and cMyc (SKM) suffices for reprogramming mouse somatic cells to induced pluripotent stem cells (iPSCs)").

42.     Exogenous OCT4 means OCT4 that is not naturally occurring within the cell and has been added to the cell, for example, by introducing a nucleic acid encoding the OCT4 protein.

43.     Shoreline has an iPSC-derived therapy manufacturing platform ("Shoreline's Platform").

44.     Shoreline's Platform takes unmodified iPSCs, genetically modifies them to grant therapeutic properties, and differentiates the iPSCs into terminally differentiated immune cells, such as NK cells, that can be used as cell therapies for patients.

45.     In August 2020, Dr. Dan S. Kaufman published a paper entitled "Metabolic Reprogramming via Deletion of *CISH* in Human iPSC-Derived NK Cells Promotes *In Vivo* Persistence and Enhances Anti-tumor Activity." **Ex. C**.

46.     In the paper, Dr. Kaufman describes the potential therapeutic benefits of knocking-out the CISH gene in iPSCs and iPSC-derived NK cells ("CISH-KO

NK cells"). *Id.* This was research Dr. Kaufman did at UCSD and is unrelated to Fate.

47. The Kaufman publication showed that CISH-KO NK cells exhibited improved metabolic fitness, greater capability for expansion, and increased cytotoxic activity against tumor cell lines. *Id.* at 224.

48. The CISH-KO NK cells improved on traditional iPSC-derived NK cells that persist in the body for a relatively short period of time, which limits the cells' anti-tumor efficacy. *Id.*

49. Fate purports to have its own iPSC-derived cell therapy manufacturing platform ("Fate's Platform").

50. Fate's Platform does not employ CISH-KO NK cells.

51. CISH-KO NK cells are functionally and genetically distinct from iPSC-derived NK cells with an intact CISH gene.

## GENERAL ALLEGATIONS

### (Common to All Counts)

**A. The Asserted Fate Patents Do Not Cover iPSCs**

52. In a May 13, 2022 Complaint, Plaintiff alleged that Shoreline infringes the Asserted Patents by making or using iPSCs. *See, e.g.*, Compl. ¶ 47 ("Upon information and belief, Shoreline and Dr. Kaufman use Plaintiffs' iPSC platform technology, including the use of exogenously introduced nucleic acid encoding OCT4, *to generate the induced pluripotent stem cells* from which Shoreline derives its immunotherapy treatments" (emphasis added)); *id.* ¶ 69 ("On information and belief, including the information regarding Defendants' *use of the infringing induced pluripotent stem cells*. . . ." (emphasis added)).

53. The Asserted Patents are directed to making a somatic cell *more susceptible* to being reprogrammed to a less differentiated state.

54. The Asserted Patents do *not* claim fully reprogramming a somatic cell to a pluripotent cell, such as an iPSC.

55.     The Asserted Patents do not claim the use of iPSCs.  Rather, the Asserted Patents cover the use and manufacture of a somatic cell that is introduced exogenous OCT4, but not one that is fully reprogrammed to an iPSC.

56.     The claims of the Asserted Patents comprise either composition of matter claims (the '369 Patent, the '797 Patent, and the '490 Patent) or method claims (the '856 Patent, the '536 Patent, and the '917 Patent).

57.     The Asserted Patents share a common specification ("Specification").

58.     The '369 Patent's sole independent claim is a composition of matter claim and recites (emphasis added):

> [Claim] 1. A composition comprising an isolated **primary somatic cell** that comprises an exogenously introduced nucleic acid encoding an Oct4 protein operably linked to at least one regulatory sequence.

59.     The '797 Patent recites two independent claims, both of which are composition of matter claims (emphasis added):

> [Claim] 1. A composition comprising an isolated **primary somatic cell** that comprises an exogenously introduced nucleic acid encoding Oct4, wherein the exogenously introduced nucleic acid increases Oct4 expression in the cell.

> [Claim] 9. A composition comprising a cDNA encoding an Oct4 protein and a cDNA encoding a Sox2 protein, wherein the composition further comprises a DNA methylation inhibitor, a histone deacetylase inhibitor or PD098059.

60.     The '490 Patent recites five independent claims, all of which are composition of matter claims (emphasis added):

> [Claim] 1. A **somatic cell** comprising an exogenous nucleic acid encoding Oct4 and an amount of Oct4 expression comparable to the amount of Oct4 expression in an embryonic stem cell.

> [Claim] 2. A **somatic cell** comprising an exogenous nucleic acid encoding Oct4 and an amount of Oct4 protein sufficient to **make the cell more susceptible to reprogramming**.

> [Claim] 7. A composition comprising an isolated cDNA encoding an Oct4 protein operably linked to at least one regulatory sequence and DNA methylation inhibitor, a histone deacetylase inhibitor, or PD09859.

> [Claim] 8. A composition comprising an isolated cDNA encoding an Oct4 protein operably linked to at least one regulatory sequence, an

33

isolated cDNA encoding a Sox2 protein operably linked to at least one regulatory sequence, and an isolated adult stem cell.

**[Claim] 9**. A composition comprising an isolated cDNA encoding an Oct4 protein operably linked to at least one regulatory sequence, an isolated cDNA encoding a Nanog protein operably linked to at least one regulatory sequence, and an isolated adult stem cell.

61.     The '856 Patent recites one independent claim, which is a method claim (emphasis added):

**[Claim] 1**. A method of making a **somatic cell more susceptible to reprogramming to a pluripotent state** comprising introducing at least one exogenous nucleic acid encoding Oct 4 operably linked to at least one regulatory sequence into the cell, thereby increasing expression of Oct4 protein in the somatic cell, wherein increased expression of Oct4 protein **makes the cell more susceptible to reprogramming to a pluripotent state**.

62.     The '536 Patent recites three independent claims, all of which are method claims (emphasis added):

**[Claim] 1**. A method of making a **primary somatic cell more susceptible to reprogramming to a less differentiated state**, comprising: introducing an exogenous nucleic acid encoding an Oct 4 protein operably linked to at least one regulatory sequence into the somatic cell, wherein expression of the exogenously introduced nucleic acid results in **making the somatic cell more susceptible to reprogramming to a less differentiated state**.

**[Claim] 6**. A method of making a **primary somatic cell more susceptible to reprogramming to a less differentiated state**, comprising: (a) contacting the somatic cell with a candidate agent of interest with respect to its potential to reprogram a somatic cell; and (b) introducing an exogenous nucleic acid encoding an Oct4 protein operably linked to at least one regulatory sequence into the somatic cell, wherein expression of the exogenously introduced pluripotency gene results in **making the somatic cell more susceptible to reprogramming to a less differentiated state**.

**[Claim] 13**. A method of making a **primary somatic cell more susceptible to reprogramming to a less differentiated state**, comprising: introducing an Oct4 protein into the somatic cell, thereby **making the somatic cell more susceptible to reprogramming to a less differentiated state**.

63.     The '917 Patent recites two independent claims, both of which are method claims (emphasis added):

**[Claim] 1**. A method of making a **somatic cell more susceptible to reprogramming to a less differentiated state**, comprising: introducing an exogenous nucleic acid encoding an Oct 4 protein

operably linked to at least one regulatory sequence into the somatic cell, thereby increasing expression of Oct4 protein in the somatic cell, wherein increased expression of Oct4 protein **makes the cell more susceptible to reprogramming**; and wherein the exogenous nucleic acid is transiently transfected into the somatic cell.

[Claim] **10**. A method of making a **somatic cell more susceptible to reprogramming to a cell having a less differentiated state**, comprising: obtaining a somatic cell that comprises an exogenously introduced polynucleic acid encoding Oct4 protein, and an exogenously introduced polynucleic acid encoding Sox2 or Nanog protein; wherein the exogenously introduced polynucleic acids result in **making the somatic cell more susceptible to reprogramming to a less differentiated state**; and wherein the exogenous polynucleic acids are transiently transfected into the cell.

64.     A somatic cell is not an iPSC.

65.     The Specification distinguishes between a reprogrammed pluripotent cell (such as an iPSC) and the somatic cell of the claims, stating that "[t]he present invention also provides methods for reprogramming somatic cells to a less differentiated state," Specification at 2:24-25, and "[a]pplicants have devised novel methods of reprogramming somatic cells to generate pluripotent cells or multipotent cells" *Id.* at 4:1-3.[1]

66.     The differentiation status of different types of cells can vary.  For example, the Specification discusses that the "[d]ifferentation status of cells is a continuous spectrum, with terminally differentiated state at one end of this spectrum and de-differentiated state (pluripotent state) at the other end." *Id.* at 7:55-57.

67.     The Specification defines "reprogramming" as "a process that alters or reverses the differentiation status of a somatic cell . . . toward a less-differentiated state." *Id.* at 7:58-65.

68.     The "somatic cell" or "primary somatic cell" of the claims does not include iPSCs because the somatic cell or primary somatic cell has not been fully

---

[1] Because the Asserted Patents share a substantially identical specification, Shoreline's citations to the "Specification" refer to the column and line numbers of the '369 Patent for brevity.  Fed. R. Civ. P. 8(a)(2).

reprogrammed to a less differentiated state. Rather, the somatic cell of the claims is at most only primed for being reprogrammed.

69.    An iPSC is an example of a cell that has been reprogrammed to a less differentiated state. An iPSC is not a somatic cell that has been only *primed* or *made more susceptible* to being reprogrammed to a less differentiated state.

70.    None of the claims for the Asserted Patents cover an iPSC.

71.    The Specification does not expressly disclose reprogramming induced pluripotent stem cells.

### 1.    The Prosecution History Shows That the Asserted Patents Do Not Cover iPSCs

72.    The prosecution history of the Asserted Patents demonstrates that the "somatic cell" or "primary somatic cell" recited by the claims does not include a somatic reprogrammed to an iPSC or a cell with a less differentiated state.

### a.    Exogenous Introduction of OCT4 Alone Does Not Reprogram a Somatic Cell to an iPSC

73.    The exogenous introduction of OCT4 alone does not reprogram a somatic cell or a primary somatic cell to a cell with a less differentiated state, such as a pluripotent cell.

74.    During prosecution of the '490 Patent, the Examiner stated that the Specification failed to demonstrate possession of a "reprogrammed somatic cell" with "an amount of Oct4 protein sufficient to reprogram the cell to a less differentiated state." **Ex. D**, 2013-09-20 Non-Final Rejection from the '490 File Wrapper at 2-3.

75.    The Examiner further stated that the specifications of the "prior applications fail to demonstrate that the . . . Oct4 expression by the somatic cell only will be sufficient to reprogram the somatic cell [to] a reprogrammed somatic cell." **Ex. E**, 2014-04-01 Final Rejection from the '490 Patent File Wrapper at 3.

76.    A somatic cell with exogenous OCT4 alone is not a fully engineered iPSC.

77.     Instead of fully reprogramming a somatic cell to an iPSC, introduction of exogenous OCT4 alone only may prime the somatic cell to be more susceptible to reprogramming to an iPSC.

78.     At most, introduction of exogenous OCT4 alone is a singular step in the multi-step process of programming a somatic cell into an iPSC.

**b.      The Claims Do Not Cover a Somatic Cell or Primary Somatic Cell That Has Been Transformed or Reprogrammed Into an iPSC**

79.     Some claims of the Asserted Patents recite a "primary somatic cell."

80.     The prosecution history shows that the claimed primary somatic cell has not been transformed or reprogrammed into an iPSC.

81.     During prosecution of the '369 Patent, the Examiner stated that, "[t]he recitation of 'primary' imparts that the cell has been isolated and placed into culture and possibly passages a few times, *but has not been transformed*." **Ex. F**, 2010-10-28 Non-Final Rejection from the '369 File Wrapper at 3-4 (emphasis added).

82.     The prosecution history confirms that a *reprogrammed* somatic cell (which is not claimed) is a cell that has been transformed into a less differentiated state.

83.     The Examiner stated during prosecution of the '856 Patent that, "[r]eprogramming encompasses altering the differentiation status of a cell." **Ex. G**, 2014-04-02 Final Rejection from the '856 Patent File Wrapper at 3.

84.     The prosecution history shows that the claims were amended not to cover a *reprogrammed* somatic cell, that is the claims were amended not to cover iPSCs.

85.     During prosecution of the '490 Patent, the Examiner rejected claims reciting a "'*reprogrammed* somatic cell.'" **Ex. E** at 3 (emphasis added).

86.     The '490 Patent claims were amended to remove the claimed "reprogrammed somatic cell" as follows:  "A ~~reprogrammed~~ somatic cell." **Ex. H**, 2014-08-21 Amendments to Claims from the '490 Patent File Wrapper at 2.

87. The '490 Patent claims were then allowed.

88. To overcome rejection by the Examiner, the claims were amended to no longer require reprogramming a somatic cell to a less differentiated state, such that the claims no longer covered reprogramming a somatic cell to an iPSC.

        **c.**      **The Claims Cover a Somatic Cell That Is "More Susceptible" to Reprogramming, But Is Not Actually Reprogrammed to an iPSC**

89. The prosecution history of the Asserted Patents shows that the claimed somatic cell or primary somatic cell is merely more susceptible to or primed for reprogramming to an iPSC.

90. An iPSC is not a cell that is more susceptible to reprogramming to a less differentiated state. An iPSC is a cell that has been reprogrammed to a less differentiated state.

91. During prosecution of the '536 Patent, the Examiner rejected claims that recited "[a] method of *reprogramming* a primary somatic cell *to a less differentiated state*, comprising . . . *reprogramming* the somatic cell *to a less differentiated state*." **Ex. I**, 2010-02-09 Claims from the '536 Patent File Wrapper at 33 (emphasis added); **Ex. J**, 2010-10-28 Non-Final Rejection from the '536 Patent File Wrapper.

92. The Examiner said that "[w]hile the specification provides specific guidance to a means of <u>priming</u> somatic cells for reprogramming, the specification fails to provide any guidance to a method that predictably reprograms primary somatic cells to a less differentiated state by solely introducing a nucleic acid encoding Oct4 to said somatic cell." **Ex. K**, 2014-04-11 Final Rejection from the '536 Patent File Wrapper at 3-4.

93. The claims were amended to "[a] method of <u>making</u> ~~reprogramming~~ a primary somatic cell <u>more susceptible to reprogramming</u> to a less differentiated state, comprising . . . <u>making</u> ~~reprogramming~~ the somatic cell <u>more susceptible to</u>

<u>reprogramming</u> to a less differentiated state." **Ex. L**, 2014-10-14 Amendments to Claims from the '536 Patent File Wrapper at 2.

94.     The claims were then allowed.

95.     The claim amendments limited the scope of the claims to a cell that is primed for reprogramming, but has not been reprogrammed into an iPSC or a cell with a less differentiated state.

96.     Plaintiff disclaimed an iPSC, i.e., a cell that has been reprogrammed to a less differentiated state.

97.     An iPSC is not a somatic cell of the claims for the Asserted Patents.

98.     An iPSC is not a primary somatic cell of the claims for the Asserted Patents.

> **d.     The Plain Language of the Claims Show That the Claims Do Not Cover iPSCs**

99.     The plain language of the claims show that the somatic cell or primary somatic cell of the claims does not include iPSCs or cells that have been reprogrammed to a less differentiated state.

100.     For example, claim 1 of the '856 Patent recites, "[a] method of making a somatic cell *more susceptible to reprogramming to a pluripotent state . . .* wherein increased expression of Oct4 protein makes the cell *more susceptible to reprogramming to a pluripotent state*." (emphasis added). A somatic cell that is "more susceptible to reprogramming to a pluripotent state" inherently has not already been reprogrammed to a pluripotent state, i.e., an iPSC.

101.     Based on the claim language, the claims of the Asserted Patents are directed to a somatic cell that is more susceptible to but has not been reprogrammed to an iPSC.

> **B.     Shoreline Does Not Make or Use Somatic Cells Expressing OCT4**

102.     Shoreline does not reprogram somatic cells into pluripotent iPSCs.

103.    In August 2020, Shoreline obtained an established iPSC line from the NINDS Human Cell and Data Repository ("NHCDR") at the NIH.  **Ex. M**, 2020-08-24 Executed Material Transfer between the NHCDR and Shoreline; **Ex. N**, 2020-08-26 Shoreline Quote for iPSC Line; **Ex. O**, 2020-08-26 Shoreline Receipt for iPSC Line.

104.    The NHCDR "is committed to providing well characterized cell sources to both academic and industry investigators to advance the study of neurological disorders."  **Ex. P**, NHCDR Website "About" Page at 1.

105.    The NHCDR also provides a good manufacturing practice ("GMP") grade iPSC line, which was obtained and used by Shoreline.  **Ex. Q,** NIH-NHCDR Website "Scientific Resources" Page at 3.

106.    The NHCDR is located at Rutgers University.

107.    Rutgers University is in New Jersey in the United States.

108.    The GMP-grade iPSC line obtained from the NHCDR ("the Lonza iPSCs") was independently made by Lonza Walkersville, Inc.  **Ex. M** at 2 ("NINDS Materials were developed by Lonza under contract for the NIH"), App. A.

109.    The GMP-grade Lonza iPSCs are available to companies developing new cell therapies, such as Shoreline, for $5000 USD.  **Ex. R**, NINDS Website "FAQ" Page at 1; **Ex. N**; **Ex. O**.

110.    The Lonza iPSCs are registered with and approved by the FDA.  **Ex. S**, 2020-08-26 Executed Lonza-Shoreline Right to Refer Letter.

111.    On August 26, 2020, Lonza authorized Shoreline to cross-reference the Drug Master File on record at the FDA for the Lonza iPSCs. *Id.*

114.    Walkersville is in Maryland in the United States.

40

**C. Kaufman and the ACTL at UCSD Do Not Reprogram Somatic Cells into iPSCs**

118. Shoreline did not direct Dr. Kaufman to reprogram any somatic cells to iPSCs for Shoreline because Shoreline obtained its iPSCs from the NIH. **Ex. M**.

119. Shoreline worked with Kaufman and the Advanced Cell Therapy Laboratory ("ACTL") of UCSD to expand, freeze, and bank the Lonza iPSCs. **Ex. O** (shipping the "NINDS iPSC Cell Lines" to the ACTL); Compl. at Ex. J (bringing "GMP grade iPSCs to bank").

120. The expansion, freezing, and banking of the established Lonza iPSCs does not involve reprogramming a somatic cell using OCT4.

121. The ACTL does not offer a service for reprogramming somatic cells to iPSCs. **Ex. U**, ACTL Website "Services" Page.

122. Work done by Kaufman or the ACTL in connection with Shoreline did not involve use, possession, or manufacture of somatic cells exogenously introduced with OCT4 and made susceptible to iPSC reprogramming.

///

///

///

41

# FIRST COUNTERCLAIM

## (Declaratory Judgment of Noninfringement of the '369 Patent)

123. Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

124. On May 13, 2022, Plaintiffs accused Shoreline of infringing the '369 Patent.

125. Claim 1 of the '369 Patent recites: "A composition comprising an isolated primary somatic cell that comprises an exogenously introduced nucleic acid encoding an Oct4 protein operably linked to at least one regulatory sequence."

126. Claim 1 of the '369 Patent is directed to "an isolated primary somatic cell" that has an "exogenously introduced nucleic acid encoding an Oct4 protein."

127. Plaintiffs allege that "[d]efendants have in the past infringed and continue to infringe the '369 Patent in violation of at least 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States *induced pluripotent stem cells* that infringe at least claim 1 of the '369 Patent." Compl. ¶ 68 (emphasis added).

128. Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman carried out the *infringing manufacture of iPSCs* for the benefit of and in his role as an officer, employee, or agent of Shoreline." *Id.* ¶ 83 (emphasis added).

129. On the contrary, the '369 Patent claims cover a somatic cell expressing exogenously-introduced OCT4. A somatic cell with exogenous OCT4 alone is not a fully reprogrammed iPSC.

130. At most, a somatic cell introduced exogenous OCT4 is the product of a singular step in the multistep process for making an iPSC—a process neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) have carried out. Neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) reprogram somatic cells to iPSCs.

131. Shoreline modifies pre-existing iPSCs to develop NK-cell therapies—a process that does not involve somatic cells expressing OCT4.

132. Plaintiffs allege that "[o]n information and belief, Defendants generate the iPSCs from isolated primary somatic cells (*e.g.*, human skin cells or fibroblasts)," and "[o]n information and belief, Defendants introduce into the somatic cells an exogenous nucleic acid (such as cDNA) encoding an OCT4 protein operably linked to at least one regulatory sequence." *Id.* ¶ 72.

133. Shoreline does not and has not reprogrammed somatic cells into iPSCs.

134. Shoreline does not and has not used OCT4 to reprogram somatic cells.

135. Shoreline does not and has not introduced into somatic cells an exogenous nucleic acid encoding OCT4.

██████████████████████████████████████████████████

137. Shoreline does not make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

138. Shoreline does not infringe under 35 U.S.C. § 271(a).

139. Plaintiffs allege that "[o]n information and belief, Defendants intended to induce patent infringement by at least the Advanced Cell Therapy Laboratory of the University of California, San Diego to produce iPSCs claimed by the '369 Patent." Compl. ¶ 80.

140. Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman and Shoreline make and use the iPSCs of the '369 Patent in their cell therapy manufacturing platform*." Id.* ¶ 83.

141. Kaufman and the ACTL helped Shoreline grow and bank an already established iPSC line obtained from the NIH.

142. Growing and banking already established iPSCs does not infringe the claims of the '369 Patent because growing and banking iPSCs does not involve making or using a somatic cell with an exogenously introduced nucleic acid encoding OCT4.

143. The somatic cell of the claims can be used or made in the process of reprogramming a somatic cell to an iPSC—a process neither Shoreline nor Kaufman (at Shoreline's directive) carried out.

144. Shoreline does not and has not induced Dr. Kaufman or the ACTL to make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

145. Shoreline does not infringe under 35 U.S.C. § 271(b).

146. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the '369 Patent by Shoreline.

147. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

148. In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '369 Patent has been or is infringed, either directly or by inducement, literally or under the doctrine of equivalents, by Shoreline through the manufacture, use, importation, sale, and/or offer for sale of its iPSCs or iPSC-derived NK cells, and (ii) Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSCs or iPSC-derived NK cells does not infringe because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 28 U.S.C. § 271(e)(1).

## SECOND COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the '856 Patent)

149. Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

150. On May 13, 2022, Plaintiffs accused Shoreline of infringing the '856 Patent.

151. Claim 1 of the '856 Patent recites: "A method of making a somatic cell more susceptible to reprogramming to a pluripotent state comprising introducing at least one exogenous nucleic acid encoding Oct 4 operably linked to at least one regulatory sequence into the cell, thereby increasing expression of Oct4 protein in the somatic cell, wherein increased expression of Oct4 protein makes the cell more susceptible to reprogramming to a pluripotent state."

152. Plaintiffs allege that "[d]efendants have in the past infringed and continue to infringe the '856 Patent in violation of at least 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States *induced pluripotent stem cells*." Compl. ¶ 95 (emphasis added).

153. Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman carried out the *infringing manufacture of iPSCs* for the benefit of and in his role as an officer, employee, or agent of Shoreline." *Id.* ¶ 112 (emphasis added).

154. On the contrary, the claims of the '856 Patent cover "[a] method of making a somatic cell more susceptible to reprogramming to a pluripotent state" by exogenously introducing OCT4.

155. The claims of the '856 Patent do not claim the complete reprogramming of a somatic cell to an iPSC.

156. At most, introducing exogenous OCT4 into a somatic cell is a singular step in the multistep process for making an iPSC—a process neither Shoreline nor

Dr. Kaufman (on Shoreline's behalf) have carried out.  Neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) reprogram somatic cells to iPSCs.

157.   Shoreline modifies pre-existing iPSCs to develop NK-cell therapies—a process that does not involve somatic cells expressing OCT4.

158.   Shoreline does not and has not practiced a method for making a somatic cell more susceptible to reprogramming to a pluripotent state by introducing into a somatic cell an exogenous nucleic acid encoding OCT4.

159.   Plaintiffs allege that "[o]n information and belief, Defendants manufacture iPSCs from isolated primary somatic cells (e.g., human skin cells or fibroblasts)," and "[o]n information and belief, Defendants introduce into the somatic cells an exogenous nucleic acid (such as cDNA) encoding an OCT4 protein [operably] linked to at least one regulatory sequence."  *Id*. ¶ 99.

160.   Shoreline does not and has not reprogrammed somatic cells into iPSCs.

161.   Shoreline does not and has not used OCT4 to reprogram somatic cells.

162.   Shoreline does not and has not introduced into somatic cells an exogenous nucleic acid encoding OCT4.

163.   

164.   Shoreline does not make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

165.   Shoreline does not infringe under 35 U.S.C. § 271(a).

166.   Plaintiffs allege that "[o]n information and belief, Defendants intended to induce patent infringement by at least the Advanced Cell Therapy Laboratory of the University of California, San Diego to produce iPSCs claimed by the '856 Patent."  Compl. ¶ 107.

167. Kaufman and the ACTL helped Shoreline grow and bank an already established iPSC line obtained from the NIH.

168. Growing and banking already established iPSCs does not infringe the claims of the '856 Patent because growing and banking iPSCs does not involve making or using a somatic cell with an exogenously introduced nucleic acid encoding OCT4.

169. The somatic cell of the claims can be used or made in the process of reprogramming a somatic cell to an iPSC—a process neither Shoreline nor Kaufman (at Shoreline's directive) carried out.

170. Shoreline does not and has not induced Dr. Kaufman or the ACTL to make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

171. Shoreline does not infringe under 35 U.S.C. § 271(b).

172. Plaintiffs allege that "[d]efendants also infringe under 35 U.S.C. § 271(g) by offering to sell, selling, or using within the United States iPSCs which are made by a process patented in the '856 Patent." Compl. ¶ 109.

173. Plaintiffs further allege that "Defendants offers for sale, sales and use of such iPSCs are infringing under § 271(g)." *Id.* ¶ 111.

174. Infringement under 35 U.S.C. § 271(g) requires importation of the alleged infringing product by the accused infringer.

175. Shoreline obtained the Lonza iPSCs from the NHCDR at Rutgers University in New Jersey.

176. Shoreline did not import the Lonza iPSCs from outside the United States.

177. Shoreline does not infringe under 35 U.S.C. § 271(g).

178. There can be no infringement under 35 U.S.C. § 271(g)(1) if the product which is made by a patented process "is materially changed by subsequent processes."

179. The iPSCs that Shoreline uses are materially changed from the somatic cells of the '856 Patent claims.

180. The method claims of the '856 Patent are directed towards making a somatic cell *more susceptible to reprogramming to a pluripotent state*; the claims are not directed towards making a iPSC by reprogramming a somatic cell.

181. The claims recite only a single factor, OCT4, but reprogramming of a somatic cell into a cell of a less differentiated state (such as an iPSC) requires additional factors, including, but not limited to Sox2, Klf4, and c-Myc.

182. The introduction of multiple reprogramming factors provides a material change to the structure and properties of a somatic cell and causes the somatic cell to be reprogrammed to a pluripotent state.

183. Reprogramming a somatic cell to an iPSC requires numerous cell culture steps in addition to adding the reprogramming factors.

184. Processing the somatic cell using multiple reprogramming factors results in material differences in the basic utility and chemical structure between the somatic cell and the iPSC.

185. iPSCs can also be reprogrammed from somatic cells without exogenously introducing OCT4. **Ex. B**.

186. The iPSC-derived NK cells are further materially changed from the somatic cell of the claims because iPSC-derived NK cells are differentiated to a different cell type.

187. Shoreline does not infringe under 35 U.S.C. § 271(g)(1).

188. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the '856 Patent by Shoreline.

48

189. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

190. In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '856 Patent has been or is infringed, either directly or by inducement, literally or under the doctrine of equivalents, by Shoreline through the manufacture, use, importation, sale, and/or offer for sale of its iPSCs or iPSC-derived NK cells, and (ii) Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSCs or iPSC-derived NK cells does not infringe because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 35 U.S.C. § 271(e)(1).

## THIRD COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the '797 Patent)

191. Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

192. On May 13, 2022, Plaintiffs accused Shoreline of infringing the '797 Patent.

193. Claim 1 of the '797 Patent recites: "A composition comprising an isolated primary somatic cell that comprises an exogenously introduced nucleic acid encoding Oct 4, wherein the exogenously introduced nucleic acid increases Oct4 expression in the cell."

194. Claim 9 of the '797 Patent recites: "A composition comprising a cDNA encoding an Oct4 protein and a cDNA encoding a Sox2 protein, wherein the composition further comprises a DNA methylation inhibitor, a histone deacetylase inhibitor or PD098059."

195.   Claims 1 and 9 of the '797 Patent are directed to either (1) a "primary somatic cell" with "an exogenously introduced nucleic acid encoding Oct 4" or (2) "cDNA [i.e. a nucleic acid] encoding an Oct4" that can be used for making a somatic cell more susceptible to reprogramming to a less differentiated or pluripotent state.

196.   Plaintiffs allege that "[d]efendants have in the past infringed and continue to infringe the '797 Patent in violation of at least 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States *induced pluripotent stem cells* that infringe at least claim 1 of the '797 Patent." Compl. ¶ 125 (emphasis added).

197.   Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman carried out the *infringing manufacture of iPSCs* for the benefit of and in his role as an officer, employee, or agent of Shoreline." *Id.* ¶ 140 (emphasis added).

198.   On the contrary, the '797 Patent claims cover a "primary somatic cell" expressing exogenously-introduced OCT4.  A somatic cell with exogenous OCT4 alone is not a fully reprogrammed iPSC.

199.   At most, a somatic cell introduced exogenous OCT4 is the product of a singular step in the multistep process for making an iPSC—a process neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) have carried out.  Neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) reprogram somatic cells to iPSCs.

200.   Shoreline modifies pre-existing iPSCs to develop NK-cell therapies—a process that does not involve somatic cells expressing OCT4.

201.   Plaintiffs allege that "[o]n information and belief, Defendants generate the iPSCs from isolated primary somatic cells (*e.g.*, human skin cells or fibroblasts)," and  "[o]n information and belief, Defendants introduce into the somatic cells an exogenous nucleic acid (such as cDNA) encoding an OCT4 protein [operably linked to at least one regulatory sequence]." *Id.* ¶ 129.

202. Shoreline does not and has not reprogrammed somatic cells into iPSCs.

203. Shoreline does not and has not used OCT4 to reprogram somatic cells.

204. Shoreline does not and has not introduced into somatic cells an exogenous nucleic acid encoding OCT4.

███████████████████████████████████████████████

206. Shoreline does not make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

207. Shoreline does not infringe under 35 U.S.C. § 271(a).

208. Plaintiffs allege that "[o]n information and belief, Defendants intended to induce patent infringement by at least the Advanced Cell Therapy Laboratory of the University of California, San Diego to produce iPSCs claimed by the '797 Patent." Compl. ¶ 137.

209. Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman and Shoreline make and use the iPSCs of the '797 Patent in their cell therapy manufacturing platform." *Id.* ¶ 140.

210. Kaufman and the ACTL helped Shoreline grow and bank an already established iPSC line obtained from the NIH.

211. Growing and banking already established iPSCs does not infringe the claims of the '797 Patent because growing and banking iPSCs does not involve making or using a somatic cell with an exogenously introduced nucleic acid encoding OCT4.

212. The somatic cell of the claims can be used or made in the process of reprogramming a somatic cell to an iPSC—a process neither Shoreline nor Kaufman (at Shoreline's directive) carried out.

51

213. Shoreline does not and has not induced Dr. Kaufman or the ACTL to make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

214. Shoreline does not infringe under 35 U.S.C. § 271(b).

215. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the '797 Patent by Shoreline.

216. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

217. In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '797 Patent has been or is infringed, either directly or by inducement, literally or under the doctrine of equivalents, by Shoreline through the manufacture, use, importation, sale, and/or offer for sale of its iPSCs or iPSC-derived NK cells, and (ii) Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSCs or iPSC-derived NK cells does not infringe because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 35 U.S.C. § 271(e)(1).

## FOURTH COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the '536 Patent)

218. Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

219. On May 13, 2022, Plaintiffs accused Shoreline of infringing the '536 Patent.

220. Claim 1 of the '536 Patent recites: "A method of making a primary somatic cell more susceptible to reprogramming to a less differentiated state,

comprising: introducing an exogenous nucleic acid encoding an Oct 4 protein operably linked to at least one regulatory sequence into the somatic cell, wherein expression of the exogenously introduced nucleic acid results in making the somatic cell more susceptible to reprogramming to a less differentiated state."

221. Claim 6 of the '536 Patent recites: "A method of making a primary somatic cell more susceptible to reprogramming to a less differentiated state, comprising: (a) contacting the somatic cell with a candidate agent of interest with respect to its potential to reprogram a somatic cell; and (b) introducing an exogenous nucleic acid encoding an Oct4 protein operably linked to at least one regulatory sequence into the somatic cell, wherein expression of the exogenously introduced pluripotency gene results in making the somatic cell more susceptible to reprogramming to a less differentiated state."

222. Claim 13 of the '536 Patent recites: "A method of making a primary somatic cell more susceptible to reprogramming to a less differentiated state, comprising: introducing an Oct4 protein into the somatic cell, thereby making the somatic cell more susceptible to reprogramming to a less differentiated state."

223. Claims 1, 6, and 13 of the '536 Patent are directed to "[a] method of making a primary somatic cell more susceptible to reprogramming to a less differentiated state" by "introducing an exogenous nucleic acid encoding an Oct4 protein."

224. Plaintiffs allege that "[d]efendants have in the past infringed and continue to infringe the '536 Patent in violation of at least 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States *induced pluripotent stem cells*." Compl. ¶ 152 (emphasis added).

225. Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman carried out the *infringing manufacture of iPSCs* for the benefit of and in his role as an officer, employee, or agent of Shoreline." *Id.* ¶ 169 (emphasis added).

226. On the contrary, the '536 Patent claims cover "[a] method of making a somatic cell more susceptible to reprogramming to a less differentiated state" by exogenously introducing OCT4, not the actual reprogramming of a somatic cell to an iPSC.

227. At most, introducing exogenous OCT4 into a somatic cell is a singular step in the multistep process for making an iPSC—a process neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) have carried out. Neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) reprogram somatic cells to iPSCs.

228. Shoreline modifies pre-existing iPSCs to develop NK-cell therapies—a process that does not involve somatic cells expressing OCT4.

229. Shoreline does not and has not practiced a method for making a somatic cell more susceptible to reprogramming to a less differentiated state by introducing into a somatic cell an exogenous nucleic acid encoding OCT4.

230. Plaintiffs allege that "[o]n information and belief, Defendants manufacture iPSCs from isolated primary somatic cells (*e.g.*, human skin cells or fibroblasts)," and "[o]n information and belief, Defendants introduce into the somatic cells an exogenous nucleic acid (such as cDNA) encoding an OCT4 protein operably linked to at least one regulatory sequence." *Id.* ¶ 156.

231. Shoreline does not and has not reprogrammed somatic cells into iPSCs.

232. Shoreline does not and has not used OCT4 to reprogram somatic cells.

233. Shoreline does not and has not introduced into somatic cells an exogenous nucleic acid encoding OCT4.

235. Shoreline does not make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an

exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

236.   Shoreline does not infringe under 35 U.S.C. § 271(a).

237.   Plaintiffs allege that "[o]n information and belief, Defendants intended to induce patent infringement by at least the Advanced Cell Therapy Laboratory of the University of California, San Diego to produce iPSCs claimed by the '536 Patent." Compl. ¶ 164.

238.   Kaufman and the ACTL helped Shoreline grow and bank an already established iPSC line obtained from the NIH.

239.   Growing and banking already established iPSCs does not infringe the claims of the '536 Patent because growing and banking iPSCs does not involve making or using a somatic cell with an exogenously introduced nucleic acid encoding OCT4.

240.   The somatic cell of the claims can be used or made in the process of reprogramming a somatic cell to an iPSC—a process neither Shoreline nor Kaufman (at Shoreline's directive) carried out.

241.   Shoreline does not and has not induced Dr. Kaufman or the ACTL to make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

242.   Shoreline does not infringe under 35 U.S.C. § 271(b).

243.   Plaintiffs allege that "[d]efendants also infringe under 35 U.S.C. § 271(g) by offering to sell, selling, or using within the United States iPSCs which are made by a process patented in the '536 Patent." Compl. ¶ 166.

244.   Plaintiffs further allege that "Defendants offers for sale, sales and use of such iPSCs are infringing under § 271(g)." *Id.* ¶ 168.

245.   Infringement under 35 U.S.C. § 271(g) requires importation of the alleged infringing product by the accused infringer.

246. Shoreline obtained the Lonza iPSCs from the NHCDR at Rutgers University in New Jersey.

247. Shoreline did not import the Lonza iPSCs from outside the United States.

248. Shoreline does not infringe under 35 U.S.C. § 271(g).

249. 35 U.S.C. § 271(g)(1) provides an exception to 35 U.S.C. 271(g) infringement if the product which is made by a patented process "is materially changed by subsequent processes."

250. The iPSCs Shoreline uses are materially changed from the somatic cells of the '536 Patent claims.

251. The method claims of the '536 Patent are directed towards making a somatic cell *more susceptible to reprogramming to a less differentiated state*; the claims are not directed towards making a iPSC by reprogramming a somatic cell.

252. The claims recite only a single factor, OCT4, but reprogramming of a somatic cell into a cell of a less differentiated state (such as an iPSC) requires additional factors, including, but not limited to Sox2, Klf4, and c-Myc.

253. The introduction of multiple reprogramming factors provides a material change to the structure and properties of a somatic cell and causes the somatic cell to be reprogrammed to a less differentiated state.

254. The processing of the somatic cell using multiple reprogramming factors results in material differences in the basic utility and chemical structure between the somatic cell and the iPSC.

255. Reprogramming a somatic cell to an iPSC requires numerous cell culture steps in addition to adding the reprogramming factors.

256. iPSCs can also be reprogrammed from somatic cells without exogenously introducing OCT4. **Ex. B**.

257. The iPSC-derived NK cells are further materially changed from the somatic cell of the claims because iPSC-derived NK cells are differentiated to a different cell type.

258. Shoreline also does not infringe under 35 U.S.C. § 271(g)(1).

259. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the '536 Patent by Shoreline.

260. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

261. In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '536 Patent has been or is infringed, either directly or by inducement, literally or under the doctrine of equivalents, by Shoreline through the manufacture, use, importation, sale, and/or offer for sale of its iPSCs or iPSC-derived NK cells, and (ii) Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSCs or iPSC-derived NK cells does not infringe because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 35 U.S.C. § 271(e)(1).

## FIFTH COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the '490 Patent)

262. Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

263. On May 13, 2022, Plaintiffs accused Shoreline of infringing the '490 Patent.

264. Claim 1 of the '490 Patent recites: "A somatic cell comprising an exogenous nucleic acid encoding Oct4 and an amount of Oct4 expression comparable to the amount of Oct4 expression in an embryonic stem cell."

265. Claim 2 of the '490 Patent recites: "A somatic cell comprising an exogenous nucleic acid encoding Oct4 and an amount of Oct4 protein sufficient to make the cell more susceptible to reprogramming."

266. Claim 7 of the '490 Patent recites: "A composition comprising an isolated cDNA encoding an Oct4 protein operably linked to at least one regulatory sequence and DNA methylation inhibitor, a histone deacetylase inhibitor, or PD09859."

267. Claim 8 of the '490 Patent recites: "A composition comprising an isolated cDNA encoding an Oct4 protein operably linked to at least one regulatory sequence, an isolated cDNA encoding a Sox2 protein operably linked to at least one regulatory sequence, and an isolated adult stem cell."

268. Claim 9 of the '490 Patent recites: "A composition comprising an isolated cDNA encoding an Oct4 protein operably linked to at least one regulatory sequence, an isolated cDNA encoding a Nanog protein operably linked to at least one regulatory sequence, and an isolated adult stem cell."

269. Claims 1 and 2 of the '490 Patent are directed to "[a] somatic cell comprising an exogenous nucleic acid encoding Oct4" in an amount sufficient to "make the cell more susceptible to reprogramming" or "comparable to . . . Oct4 expression in an embryonic stem cell."

270. Claims 7, 8, and 9 of the '490 Patent are directed to "an isolated cDNA [i.e. nucleic acid] encoding an Oct4 protein" in conjunction with another reprogramming factor used for making the somatic cell more susceptible to reprogramming.

271. Plaintiffs allege that "[d]efendants have in the past infringed and continue to infringe the '490 Patent in violation of at least 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States *induced pluripotent stem cells* that infringe at least claim 1 of the '490 Patent." Compl. ¶ 182 (emphasis added).

58

272.   Plaintiffs further allege that "[o]n information and belief, Dr. Kaufman carried out the *infringing manufacture of iPSCs* for the benefit of and in his role as an officer, employee, or agent of Shoreline." *Id.* ¶ 197 (emphasis added).

273.   On the contrary, the '490 Patent claims cover "a somatic cell" expressing exogenously-introduced OCT4.  A somatic cell with exogenous OCT4 alone is not a fully reprogrammed iPSC.

274.   At most, a somatic cell introduced exogenous OCT4 is the product of a singular step in the multistep process for making an iPSC—a process neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) have carried out.  Neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) reprogram somatic cells to iPSCs.

275.   Shoreline modifies pre-existing iPSCs to develop NK-cell therapies—a process that does not involve somatic cells expressing OCT4.

276.   Plaintiffs allege that "[o]n information and belief, Defendants generate the iPSCs from isolated primary somatic cells (*e.g.*, human skin cells or fibroblasts)," and "[o]n information and belief, Defendants introduce into the somatic cells an exogenous nucleic acid (such as cDNA) encoding an OCT4 protein [operably linked to at least one regulatory sequence]." *Id.* ¶ 186.

277.   Shoreline does not and has not reprogrammed somatic cells into iPSCs.

278.   Shoreline does not and has not used OCT4 to reprogram somatic cells.

279.   Shoreline does not and has not introduced into somatic cells an exogenous nucleic acid encoding OCT4.

281.   Shoreline does not make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an

exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

282. Shoreline does not infringe under 35 U.S.C. § 271(a).

283. Plaintiff alleges that "[o]n information and belief, Defendants intended to induce patent infringement by at least the Advanced Cell Therapy Laboratory of the University of California, San Diego to produce iPSCs claimed by the '490 Patent." Compl. ¶ 194.

284. Plaintiff further alleges that "[o]n information and belief, Dr. Kaufman and Shoreline make and use the iPSCs of the '490 Patent in their cell therapy manufacturing platform." *Id.* ¶ 197.

285. Kaufman and the ACTL helped Shoreline grow and bank an already established iPSC line obtained from the NIH.

286. Growing and banking already established iPSCs does not infringe the claims of the '490 Patent because growing and banking iPSCs does not involve making or using a somatic cell with an exogenously introduced nucleic acid encoding OCT4.

287. The somatic cell of the claims can be used or made in the process of reprogramming a somatic cell to an iPSC—a process neither Shoreline nor Kaufman (at Shoreline's directive) carried out.

288. Shoreline does not and has not induced Dr. Kaufman or the ACTL to make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

289. Shoreline does not infringe under 35 U.S.C. § 271(b).

290. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the '490 Patent by Shoreline.

291. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

SHORELINE ANSWER AND COUNTERCLAIMS
CASE NO. 3:22-cv-00676-RBM-MSB

292.   In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '490 Patent has been or is infringed, either directly or by inducement, literally or under the doctrine of equivalents, by Shoreline through the manufacture, use, importation, sale, and/or offer for sale of its iPSCs or iPSC-derived NK cells, and (ii) Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSCs or iPSC-derived NK cells does not infringe because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 35 U.S.C. § 271(e)(1).

## SIXTH COUNTERCLAIM

### (Declaratory Judgment of Noninfringement of the '917 Patent)

293.   Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

294.   On May 13, 2022, Plaintiffs accused Shoreline of infringing the '917 Patent.

295.   Claim 1 of the '917 Patent recites:  "A method of making a somatic cell more susceptible to reprogramming to a less differentiated state, comprising: introducing an exogenous nucleic acid encoding an Oct 4 protein operably linked to at least one regulatory sequence into the somatic cell, thereby increasing expression of Oct4 protein in the somatic cell, wherein increased expression of Oct4 protein makes the cell more susceptible to reprogramming; and wherein the exogenous nucleic acid is transiently transfected into the somatic cell."

296.   Claim 10 of the '917 Patent recites:  "A method of making a somatic cell more susceptible to reprogramming to a cell having a less differentiated state, comprising: obtaining a somatic cell that comprises an exogenously introduced polynucleic acid encoding Oct4 protein, and an exogenously introduced polynucleic

61

acid encoding Sox2 or Nanog protein; wherein the exogenously introduced polynucleic acids result in making the somatic cell more susceptible to reprogramming to a less differentiated state; and wherein the exogenous polynucleic acids are transiently transfected into the cell."

297. Claims 1 and 10 of the '917 Patent are directed to "[a] method of making a somatic cell more susceptible to reprogramming to a less differentiated state" by "introducing an exogenous nucleic acid encoding an Oct 4 protein."

298. Plaintiff alleges that "[d]efendants have in the past infringed and continue to infringe the '917 Patent in violation of at least 35 U.S.C. § 271(a) by making, using, offering to sell, and/or selling, in the United States, or importing into the United States *induced pluripotent stem cells*." Compl. ¶ 209 (emphasis added).

299. Plaintiff further alleges that "[o]n information and belief, Dr. Kaufman carried out the *infringing manufacture of iPSCs* for the benefit of and in his role as an officer, employee, or agent of Shoreline." *Id.* ¶ 226 (emphasis added).

300. On the contrary, the '917 Patent claims cover "[a] method of making a somatic cell more susceptible to reprogramming to a less differentiated state" by exogenously introducing OCT4, not the actual reprogramming of a somatic cell to an iPSC.

301. At most, introducing exogenous OCT4 into a somatic cell is a singular step in the multistep process for making an iPSC—a process neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) have carried out. Neither Shoreline nor Dr. Kaufman (on Shoreline's behalf) reprogram somatic cells to iPSCs.

302. Shoreline modifies pre-existing iPSCs to develop NK-cell therapies—a process that does not involve somatic cells expressing OCT4.

303. Shoreline does not and has not practiced a method for making a somatic cell more susceptible to reprogramming to a less differentiated state by introducing into a somatic cell an exogenous nucleic acid encoding OCT4.

304.    Plaintiff alleges that "[o]n information and belief, Defendants manufacture iPSCs from isolated primary somatic cells (*e.g.*, human skin cells or fibroblasts)," and "[o]n information and belief, Defendants transiently transfect the somatic cells with an exogenous nucleic acid (such as cDNA) that encodes an OCT4 protein operably linked to at least one regulatory sequence." *Id.* ¶ 213.

305.    Shoreline does not and has not reprogrammed somatic cells into iPSCs.

306.    Shoreline does not and has not used OCT4 to reprogram somatic cells.

307.    Shoreline does not and has not introduced into somatic cells an exogenous nucleic acid encoding OCT4.

309.    Shoreline does not make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

310.    Shoreline does not infringe under 35 U.S.C. § 271(a).

311.    Plaintiff alleges that "[o]n information and belief, Defendants intended to induce patent infringement by at least the Advanced Cell Therapy Laboratory of the University of California, San Diego to produce iPSCs claimed by the '917 Patent." Compl. ¶ 221.

312.    Kaufman and the ACTL helped Shoreline grow and bank an already established iPSC line obtained from the NIH.

313.    Growing and banking already established iPSCs does not infringe the claims of the '917 Patent because growing and banking iPSCs does not involve making or using a somatic cell with an exogenously introduced nucleic acid encoding OCT4.

314. The somatic cell of the claims can be used or made in the process of reprogramming a somatic cell to an iPSC—a process neither Shoreline nor Kaufman (at Shoreline's directive) carried out.

315. Shoreline does not and has not induced Dr. Kaufman or the ACTL to make, use, offer to sell, and/or sell, in the United States, or import into the United States a primary somatic cell that comprises an exogenously introduced nucleic acid encoding an OCT4 protein operably linked to at least one regulatory sequence.

316. Shoreline does not infringe under 35 U.S.C. § 271(b).

317. Plaintiff alleges that "[d]efendants also infringe under 35 U.S.C. § 271(g) by offering to sell, selling, or using within the United States iPSCs which are made by a process patented in the '917 Patent." Compl. ¶ 223.

318. Plaintiff further alleges that "[d]efendants offers for sale, sales and use of such iPSCs are infringing under § 271(g)." *Id.* ¶ 225.

319. Infringement under 35 U.S.C. § 271(g) requires importation of the alleged infringing product by the accused infringer.

320. Shoreline obtained the Lonza iPSCs from the NHCDR at Rutgers University in New Jersey.

321. Shoreline did not import the Lonza iPSCs from outside the United States.

322. Shoreline does not infringe under 35 U.S.C. § 271(g).

323. 35 U.S.C. § 271(g)(1) provides an exception to 35 U.S.C. § 271(g) infringement if the product which is made by a patented process "is materially changed by subsequent processes."

324. The iPSCs Shoreline uses are materially changed from the somatic cells of the '917 Patent claims.

325. The method claims of the '917 Patent are directed towards making a somatic cell *more susceptible to reprogramming to a less differentiated state*; the claims are not directed towards making a iPSC by reprogramming a somatic cell.

326. The claims recite only a single factor (OCT4) or two factors (OCT4 and Sox2 or Nanog), but reprogramming of a somatic cell into a cell of a less differentiated state (such as an iPSC) requires additional factors, including, but not limited to Klf4 and c-Myc.

327. The introduction of multiple reprogramming factors cause a material change to the structure and properties of a somatic cell and cause the somatic cell to be reprogrammed to a less differentiated state.

328. The processing of the somatic cell using multiple reprogramming factors results in material differences in the basic utility and chemical structure between the somatic cell and the iPSC.

329. Reprogramming a somatic cell to an iPSC requires numerous cell culture steps in addition to adding the reprogramming factors.

330. iPSCs can also be reprogrammed from somatic cells without exogenously introducing OCT4. **Ex. B**.

331. The iPSC-derived NK cells are further materially changed from the somatic cell of the claims because iPSC-derived NK cells are differentiated to a different cell type.

332. Shoreline also does not infringe under 35 U.S.C. § 271(g)(1).

333. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the '917 Patent by Shoreline.

334. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

335. In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that (i) no claim of the '917 Patent has been or is infringed, either directly or by inducement, literally or under the doctrine of equivalents, by Shoreline through the manufacture, use, importation, sale, and/or offer for sale of its iPSCs or iPSC-derived NK cells, and

(ii) Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSCs or iPSC-derived NK cells does not infringe because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 35 U.S.C. § 271(e)(1).

## SEVENTH COUNTERCLAIM

### (Declaratory Judgment of Noninfringement under 35 U.S.C. § 271(e) as to All Asserted Patents)

336. Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

337. On May 13, 2022, Plaintiffs accused Shoreline of infringing the Asserted Patents.

338. Under the 35 U.S.C. § 271(e) safe harbor, actions reasonably related to obtaining regulatory approval of a biological product are exempt from infringement.

339. Reasonably related actions include development of information that is appropriate for submission to the FDA in the regulatory process, i.e., actions that are reasonably related to obtaining FDA approval.

340. Plaintiffs allege that work involving iPSC reprogramming "is not reasonably related to the generation of the kinds of information submitted to support an investigational new drug application ('IND') or new drug application ('NDA')." Compl. ¶ 60.

341. Plaintiff relies on an exhibit in the Complaint, which states that Shoreline's work on producing iPSCs "allows [Shoreline] to bring in-house GMP grade iPSCs to bank and rapidly initiate *preclinical development and IND-enabling studies*." *Id.* at Ex. J (emphasis added).

342. The ACTL offers services for regulatory studies. *Id.* ¶ 80; **Ex. V**, ACTL Service Form at 2 (asking for the regulatory status of the project, including

"IND/Health Authority (HA) submission filed," "IRB Review completed," and "Pre-IND Meeting completed"), 4 (asking for the timeline of "GMP cell production" and clinical trial dates).

343. Regulatory approval by the FDA for cellular based therapies, such as iPSC-derived cell lines, implicate unique safety concerns and have special regulatory guidance. **Ex. W**, Consumer Update re Stem Cell Safety Concerns; **Ex. X**, FDA Guidance for Cellular Therapies.

344. iPSC-derived cellular therapies, such as iPSC-derived NK cells, are reprogrammed from iPSCs, and information regarding the iPSC cell source is submitted to the FDA.

345. iPSCs are more than just a common laboratory tool used to generate NK cells.

346. iPSCs can differentiate into NK cells.

347. Information pertaining to the development or use of iPSCs and iPSC-derived cellular therapies are relevant to gaining FDA approval. *See, e.g.*, **Ex. S** (referencing a drug master file submitted to the FDA for a GMP-grade iPSC line).

348. The FDA requires submission of safety information regarding genetically modified cell therapies.

349. Safety information regarding genetically modified cell therapies includes data showing that there is no off-target genetic engineering of the cell therapy.

350. Somatic cells can be genetically modified to generate iPSCs.

351. iPSCs that have knockout of the CISH gene are genetically modified.

352. The FDA will require safety information regarding Shoreline's genetically modified CISH-KO iPSCs.

353. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the noninfringement of the Asserted Patent by Shoreline.

354.   This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

355.   In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that Shoreline's manufacture, use, offer to sell, or sale within the United States of iPSC NK cells are not acts of infringement because they are solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products, within the meaning of 35 U.S.C. § 271(e)(1).

## EIGTH COUNTERCLAIM

### (Declaratory Judgment of Invalidity as to All Asserted Patents)

356.   Shoreline restates and realleges the foregoing paragraphs of these Counterclaims as if fully set forth herein.

357.   There is an actual, substantial, and continuing case or controversy between the parties regarding the validity of the claims of the Asserted Patents.

358.   Fate has alleged that the Asserted Patents are valid and enforceable.

359.   The claims of the Asserted Patent are invalid for failure to satisfy one or more of the conditions for patentability in Title 35 of the United States Code, including 35 U.S.C. §§ 102, 103, and 112, as well as other judicially created bases for patent invalidity.

360.   As a non-limiting example, at least claim 2 of the '490 Patent, claim 1 of the '845 Patent, claims 1, 6, and 13 of the '536 Patent, and claims 1 and 10 of the '917 Patent are invalid for lack of sufficient written description and enablement under 35 U.S.C. § 112.

361.   The claims require using OCT4 to make a somatic cell more susceptible to reprogramming to a less differentiated or pluripotent state.

362. The Specification includes at most a single working example. Specification at 18:51-19:67.

363. That example does not involve the reprogramming of a somatic cell. *Id.*

364. The example discusses creating a fibroblast (i.e., a somatic cell) with inducible OCT4 expression. *Id.*

365. Nuclear transfer involves removing the nucleus from one cell and replacing it with the nucleus from another cell.

366. The examples discusses using nuclear transfer to transfer the nucleus from a somatic cell to an egg cell that had its nucleus removed. *Id.* at 19:23-25.

367. The modified *egg cell* was then cultured and developed into pluripotent embryonic stem ("ES") cells. *Id.* at 19:26-27.

368. An egg cell is a type of germ cell, which is not a somatic cell.

369. The example discusses that embryos with induced OCT4 expression had a greater propensity to develop into ES cells compared to embryos without induced OCT4 expression. *Id.* at Table 1.

370. The data from the nuclear transfer experiment of the example does not show reprogramming of the *somatic cell* to a less differentiated or pluripotent state.

371. The Specification states that, "[i]t would be useful to reprogram somatic cells directly into ES cells *without the use of oocytes and nuclear transfer technology*" (emphasis added) (*id.* at 3:65-67), and "[g]enerating pluripotent or multi potent cells by somatic cell reprogramming using the methods of the present invention has at least two advantages . . . . the methods of the present invention allow one to generate pluripotent *without using embryos, oocytes and/or nuclear transfer technology*" (emphasis added) (*id.* at 4:21-32).

372. The Specification provides no experimental data that a somatic cell can be reprogrammed to a pluripotent or less differentiated state by introducing exogenous OCT4.

373. The Specification provides no experimental data that a somatic cell can be made more susceptible to reprogramming to a less differentiated or pluripotent state by introducing exogenous OCT4.

374. The claims of the Asserted Patents are invalid for lack of adequate written description and failing to enable claims directed to a somatic cell made more susceptible to reprogramming to a less differentiated or pluripotent state.

375. As a result of Plaintiffs' allegations against Shoreline, an actual controversy exists as to the invalidity of the Asserted Patent by Shoreline.

376. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

377. In order to fully and finally resolve this controversy between the parties, Shoreline requests that the Court determine and declare pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, that the Asserted Patents are invalid.

## **DEMAND FOR JURY TRIAL**

Shoreline hereby demands trial by jury on all issues so triable

## **PRAYER FOR RELIEF**

WHEREFORE, Shoreline prays for the following relief:

a.    That Plaintiffs take nothing by this action against Shoreline;

b.    That judgment be entered that the claims of the '369 Patent, the '856 Patent, the '797 Patent, the '536 Patent, the '490 Patent, and the '917 Patent are invalid;

c.    That judgment be entered that Shoreline does not and has not infringed any valid and enforceable claim of the '369 Patent, the '856 Patent, the '797 Patent, the '536 Patent, the '490 Patent, or the '917 Patent;

d.    That judgment be entered that Shoreline's accused conduct falls within the protection of the safe harbor provision, 35 U.S.C. § 271(e)(1);

| | |
|---|---|
| 1 | e. That judgment be entered in favor of Shoreline and against Plaintiffs |
| 2 | as to every cause of action alleged in the Complaint, every defense in |
| 3 | the Answer, and every cause of action in the Counterclaims; |
| 4 | f. That the Court issue an order awarding Shoreline its costs pursuant to |
| 5 | 35 U.S.C. § 284 and/or Rule 54(d) of the Federal Rules of Civil |
| 6 | Procedure; |
| 7 | g. That the Court issue an order finding that this is an exceptional case |
| 8 | under 35 U.S.C. § 285 and awarding Shoreline its costs and fees in this |
| 9 | action, including attorneys' fees, and pre-judgment interest thereon; |
| 10 | h. That judgment of dismissal with prejudice of the Complaint be entered |
| 11 | in favor of Shoreline; |
| 12 | i. That judgment be entered in Shoreline's favor awarding attorneys' fees |
| 13 | and costs of suit; and |
| 14 | j. That Shoreline be granted such other and further relief as the Court |
| 15 | may deem just and proper. |

Dated: July 6, 2022                                MORRISON & FOERSTER LLP


By:  *s/ Eric M. Acker*
_____
Eric M. Acker
EAcker@mofo.com

Attorney for Defendant and
Counterclaimant Shoreline
Biosciences, Inc.