# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATE THERAPEUTICS, INC.; and WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>Plaintiffs,<br><br>v.<br><br>SHORELINE BIOSCIENCES, INC.,<br><br>Defendant. | Case No.: 22-cv-00676-H-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES**<br><br>[Doc. No. 396.] |

On September 14, 2023, Defendant Shoreline Biosciences, Inc. ("Shoreline") filed a motion for attorney's fees. (Doc. No. 396.) On October 2, 2023, the Court took the matter under submission. (Doc. No. 409.) On October 2, 2023, Plaintiffs Fate Therapeutics, Inc. ("Fate") and Whitehead Institute for Biomedical Research ("Whitehead") filed a response in opposition to Shoreline's motion. (Doc. No. 413.) On October 6, 2023, Shoreline filed a reply. (Doc. No. 423.) For the reasons below, the Court denies Shoreline's motion for attorney's fees.

## Background

In this action, Plaintiffs asserted claims for patent infringement under 35 U.S.C. §§ 271(a), (b), and (g) against Defendant Shoreline, alleging claims for infringement of U.S. Patent Nos. 8,071,369 ("the '369 Patent"), 8,932,856 ("the '856 Patent"), 8,951,797 ("the

'797 Patent"), 8,940,536 ("the '536 Patent"), 9,169,490 ("the '490 Patent"), 10,457,917 ("the '917 Patent"), and 10,017,744 ("the '744 Patent") (collectively, "the asserted patents"). (Doc. No. 162, Supp. FAC ¶¶ 157-414.) Specifically, Plaintiffs alleged that Shoreline makes, uses, sells, offers for sale, and/or imports induced pluripotent stem cells ("iPSCs") that infringe one or more claims of the asserted patents.[1,2] (Id. ¶ 140; see, e.g., id. ¶¶ 162 ("Defendants' use of their 'iPSC-derived cell therapy manufacturing platform' infringed at least claim 1 of the '369 Patent."), 212 ("iPSCs used by Defendants to make at least the iPSC-derived natural kill (NK) cell platforms are made by a process that comprises at least each step of claim 1 of the '856 Patent.").)

Plaintiff Whitehead is the owner via assignment of the patents-in-suit. See U.S. Patent No. 8,071,369, at [73] (issued Dec. 6, 2011); U.S. Patent No. 8,932,856, at [73] (issued Jan. 13, 2015); U.S. Patent No. 8,951,797, at [73] (issued Feb. 10, 2015); U.S. Patent No. 8,940,536, at [73] (issued Jan. 27, 2015); U.S. Patent No. 9,169,490, at [73] (issued Oct. 27, 2015); U.S. Patent No. 10,017,744, at [73] (issued Jul. 10, 2018); U.S. Patent No. 10,457,917, at [73] (issued Oct. 29, 2019). Plaintiffs allege that Fate is the exclusive licensee of the asserted patents. (Doc. No. 162, Supp. FAC ¶¶ 16, 19.)

The '369 Patent is entitled "Compositions for reprogramming somatic cells" and

---

[1] Induced pluripotent stem cells ("iPSCs") "are pluripotent stem cells generated from somatic cells by reprogramming." (Doc. 162, Supp. FAC ¶ 31; see Doc. No. 184, Answer to Supp. FAC ¶ 31; see also Doc. No. 151-14, Plath Decl. ¶ 59; Doc. No. 152, Snyder Decl. ¶ 43.) "Four specific genes—cMYC, OCT3/4, SOX2 and KLF4—encoding transcription factors play a role in converting or reprogramming somatic cells into pluripotent stem cells." (Doc. 162, Supp. FAC ¶ 32; see Doc. No. 184, Answer to Supp. FAC ¶ 32; Doc. No. 199, Answer to Supp. FAC ¶ 32; see also Doc. No. 184, Counterclaims ¶ 43 ("iPSCs are generated in culture from somatic cells through the introduction of reprogramming factors that transform a somatic cell into a pluripotent state."); Doc. No. 152, Snyder Decl. ¶¶ 41, 43.)

[2] The asserted claims in this action are: claims 1-6, 8 and 9 of the '369 Patent; claims 1-7 of the '856 Patent; claims 1-6 and 8 of the '797 Patent; claims 1-10 and 12-17 of the '536 Patent; claims 1-6 and 8-10 of the '490 Patent; claims 1-18 of the '917 Patent; and claims 1-3 and 5-9 of the '744 Patent. (Doc. No. 354-7, Plath Decl. ¶ 1.)

was issued on December 6, 2011. '369 Patent at [45], [54]. The '856 Patent is entitled "Methods for reprogramming somatic cells" and was issued on January 13, 2015. '856 Patent at [45], [54]. The '797 Patent is entitled "Compositions for identifying reprogramming factors" and was issued on February 10, 2015. '797 Patent at [45], [54]. The '536 Patent is entitled "Methods for making somatic cells more susceptible to reprogramming" and was issued on January 27, 2015. '536 Patent at [45], [54]. The '490 Patent is entitled "Methods for reprogramming somatic cells" and was issued on October 27, 2015. '490 Patent at [45], [54]. The '744 Patent is entitled "Methods for reprogramming somatic cells" and was issued on Jul. 10, 2018. '744 Patent at [45], [54]. The '917 Patent is entitled "Methods for reprogramming somatic cells" and was issued on October 29, 2019. '917 Patent at [45], [54].

The asserted patents are all related and all share a common specification.[3] (See Doc. No. 149 at 5 & n.2; Doc. No. 151 at 2 & n.2 (the parties agreeing that the asserted patents all share the same specification); see also Doc. No. 162, Supp. FAC ¶ 132.) The shared specification states that the disclosed invention is directed to "methods for reprogramming somatic cells to a less differentiated state." '369 Patent col. 2 ll. 24-25; see also id. at [57] ("The invention provides methods for reprogramming somatic cells to generate multipotent or pluripotent cells.").

The asserted composition patents are the '369 Patent, the '797 Patent, and the '490 Patent. Independent claim 1 of the '369 Patent claims:

> A composition comprising an isolated primary somatic cell that comprises an exogenously introduced nucleic acid encoding an Oct4 protein operably linked to at least one regulatory sequence.

'369 Patent col. 20 ll. 40-43.

Independent claim 1 of the '797 Patent claims:

> A composition comprising an isolated primary somatic cell that comprises an exogenously introduced nucleic acid encoding Oct 4, wherein the

---

[3] The Court will cite to the '369 Patent's specification as the "shared specification" of the asserted patents.

exogenously introduced nucleic acid increases Oct4 expression in the cell.

'797 Patent col. 20 ll. 40-43.

Independent claim 1 of the '490 Patent claims:

> A somatic cell comprising an exogenous nucleic acid encoding Oct4 and an amount of Oct4 expression comparable to the amount of Oct4 expression in an embryonic stem cell.

'490 Patent col. 20 ll. 39-41.

The asserted method patents are the '856 Patent, the '536 Patent, the '744 Patent, and the '917 Patent. Independent claim 1 of the '856 Patent claims:

> A method of making a somatic cell more susceptible to reprogramming to a pluripotent state comprising introducing at least one exogenous nucleic acid encoding Oct 4 operably linked to at least one regulatory sequence into the cell, thereby increasing expression of Oct4 protein in the somatic cell, wherein increased expression of Oct4 protein makes the cell more susceptible to reprogramming to a pluripotent state.

'856 Patent col. 20 ll. 38-44.

Independent claim 1 of the '536 Patent claims:

> A method of making a primary somatic cell more susceptible to reprogramming to a less differentiated state, comprising: introducing an exogenous nucleic acid encoding an Oct 4 protein operably linked to at least one regulatory sequence into the somatic cell, wherein expression of the exogenously introduced nucleic acid results in making the somatic cell more susceptible to reprogramming to a less differentiated state.

'536 Patent col. 20 ll. 37-44.

Independent claim 1 of the '744 Patent claims:

> A method of making a somatic cell more susceptible to reprogramming to a cell having a less differentiated state, comprising:
>
> > obtaining a somatic cell that comprises an exogenously introduced polynucleic acid encoding Oct4 protein, and an exogenously introduced polynucleic acid encoding Sox2 or Nanog protein;
>
> > wherein the exogenously introduced polynucleic acids result in making the somatic cell more susceptible to reprogramming to a less differentiated state.

'744 Patent col. 21 ll. 14-23.

Independent claim 1 of the '917 Patent claims:

> A method of making a somatic cell more susceptible to reprogramming to a less differentiated state, comprising: introducing an exogenous nucleic acid encoding an Oct 4 protein operably linked to at least one regulatory sequence into the somatic cell, thereby increasing expression of Oct4 protein in the somatic cell, wherein increased expression of Oct4 protein makes the cell more susceptible to reprogramming; and wherein the exogenous nucleic acid is transiently transfected into the somatic cell.

'917 Patent col. 21 ll. 16-24.

On May 13, 2022, Plaintiffs filed a complaint against Defendants Shoreline and Dan S. Kaufman, alleging claims for infringement of the '369 Patent, the '856 Patent, the '797 Patent, the '536 Patent, the '490 Patent, and the '917 Patent. (Doc. No. 1, Compl. ¶¶ 66-236.) On August 12, 2022, the Court issued a scheduling order. (Doc. No. 51.) On January 3, 2023, Plaintiffs filed a first amended complaint against Defendants, adding a claim for infringement of the '744 Patent. (Doc. No. 112, FAC ¶¶ 375-414.) On January 10, 2023, the Court issued an amended scheduling order. (Doc. No. 115.)

On February 14, 2023, Plaintiffs filed a supplemental first amended complaint – the operative complaint. (Doc. No. 162, Supp. FAC.) On February 17 and 23, 2023, Defendants filed answers and counterclaims to Plaintiffs' supplemental first amended complaint. (Doc. Nos. 184, 199.)

On February 28, 2023, the Court issued a claim construction order construing agreed up and disputed claim terms from the asserted patents.[4] (Doc. No. 208.) On March 27, 2023, the Court denied Shoreline's motion for partial summary judgment. (Doc. No. 226.) On March 30, 2023, the Court denied Defendants' partial motion to dismiss Plaintiffs' supplemental first amended complaint. (Doc. No. 234.)

On June 9, 2023, the Court dismissed Defendant Kaufman from the action with prejudice pursuant to Plaintiffs' motion. (Doc. No. 273.) On August 30, 2023, the Court

---

[4] On April 19, 2023, the Court denied Plaintiffs' motion for reconsideration of the Court's claim construction order. (Doc. No. 255.)

granted Defendant Shoreline's motion for summary judgment of non-infringement. (Doc. No. 390.) On August 31, 2023, the Court entered a judgment in favor of Defendant Shoreline and against Plaintiffs Whitehead and Fate. (Doc. No. 391.)

By the present motion, Shoreline moves for attorney's fees pursuant to 35 U.S.C. § 285. (Doc. No. 429 at 1, 23.) Specifically, Shoreline requests that the Court award it an estimated $7,000,000 in attorney's fees. (Id. at 23.) See Fed. R. Civ. P. 54(d)(2)(B)(iii) (requiring that any motion for attorney's fees must "state the amount sought or provide a fair estimate of it").

## Discussion

### I. Legal Standards Governing Attorney's Fees Under 35 U.S.C. § 285

"Section 285 of the Patent Act authorizes a district court to award attorney's fees in patent litigation." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 548 (2014). Section 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

The Supreme Court has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 572 U.S. at 554; accord Energy Heating, LLC v. Heat On-The-Fly, LLC, 15 F.4th 1378, 1382 (Fed. Cir. 2021). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Octane Fitness, 572 U.S. at 555. But "fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 858 F.3d 1371, 1376 (Fed. Cir. 2017) (quoting Octane Fitness, 572 U.S. at 548); see Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp., No. 17CV87-GPC(MDD), 2018 WL 6181479, at *4 (S.D. Cal. Nov. 27, 2018) ("Failure to win on summary judgment is not a basis for an attorney's fee award under § 285."); see also FireBlok IP Holdings, LLC v. Hilti, Inc., 855 F. App'x 735, 739 (Fed. Cir. 2021) ("The strength of a party's litigation position is what is relevant to an

exceptional case determination, not the correctness or success of that position." (citing SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015))).

"[A] district court makes the exceptional-case determination on a case-by-case basis considering the totality of the circumstances." Energy Heating, 15 F.4th at 1382 (citing Octane Fitness, 572 U.S. at 554); see Intell. Ventures I LLC v. Trend Micro Inc., 944 F.3d 1380, 1384 (Fed. Cir. 2019) (explaining that a district court must determine whether "the case overall was exceptional"). In determining whether to award fees, district courts may consider a nonexclusive list of factors, including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Octane Fitness, 572 U.S. at 554 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). There is no precise rule or formula for determining whether to award attorney's fees, but instead equitable discretion should be exercised in light of the above considerations. Id. at 554 (quoting Fogerty, 510 U.S. at 534; see Blackbird Tech LLC v. Health In Motion LLC, 944 F.3d 910, 914 (Fed. Cir. 2019).

The determination of whether a case is "exceptional" under § 285 is committed "to the discretion of the district court." Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563 (2014); see Thermolife Int'l LLC v. GNC Corp., 922 F.3d 1347, 1356 (Fed. Cir. 2019) ("We generally 'give great deference to the district court's exercise of discretion in awarding fees.'" (quoting Energy Heating, 889 F.3d at 1307)); Spineology, 910 F.3d at 1229 ("We review all aspects of a district court's § 285 determination for abuse of discretion, keeping in mind that the district court is better positioned to decide whether a case is exceptional, because it lives with the case over a prolonged period of time." (quoting Highmark, 572 U.S. at 560, 564)). "A district court must 'provide a concise but clear explanation of its reasons for the fee award.'" Thermolife, 922 F.3d at 1356 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). The party seeking fees must prove that the case is exceptional by a preponderance of the evidence. Energy Heating, 15 F.4th at 1382; see Octane Fitness, 572 U.S. at 557–58.

## II. Analysis

Shoreline argues that the Court should find that this case is exceptional because Plaintiffs knew that their claims for patent infringement were meritless, yet they continued to burden Shoreline with baseless litigation. (Doc. No. 429 at 11-18; Doc. No. 432 at 5-8.) In response, Plaintiffs argue that Shoreline cannot show that Plaintiffs' litigating positions were objectively weak or that they stand out from others to warrant a finding that this case is exceptional. (Doc. No. 431 at 1, 11-20.)

The Court disagrees with Shoreline's assertion that Plaintiffs' claims for patent infringement in this case were meritless. The Court acknowledges that Plaintiffs' claims for patent infringement were ultimately defeated by Shoreline via a motion for summary judgment of non-infringement. But that does not mean that the claims were objectively baseless or frivolous or that the case is exceptional. See Cellspin Soft, Inc. v. Fitbit, Inc., No. 4:17-CV-05928-YGR, 2022 WL 17968844, at *3 (N.D. Cal. Oct. 6, 2022) ("[C]laims that are not sufficiently strong to survive summary judgment do not necessitate a finding of an exceptional case."); Universal Stabilization Techs., 2018 WL 6181479, at *4 ("Failure to win on summary judgment is not a basis for an attorney's fee award under § 285."); Enovsys LLC v. AT&T Mobility LLC, No. CV 11-5210 SS, 2016 WL 3460794, at *12 (C.D. Cal. Feb. 16, 2016) ("Even though the Court ultimately disagreed with certain of Enovsys's contentions on summary judgment, it does not necessarily follow that Enovsys's positions were 'objectively baseless' . . . ."). "The strength of a party's litigation position is what is relevant to an exceptional case determination, not the correctness or success of that position." FireBlok, 855 F. App'x at 739 (citing SFA, 793 F.3d at 1348) see Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc., No. 18-CV-00346-LHK, 2021 WL 75755, at *3 (N.D. Cal. Jan. 7, 2021) ("'[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith.'"); see also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc., 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("[A]s the Supreme Court made clear in Octane, fee awards are not to be used 'as a penalty for failure to win a

patent infringement suit.' In other words, fees are not awarded solely because one party's position did not prevail." (quoting Octane Fitness, 572 U.S. at 548)). As such, in assessing whether the case is exceptional under § 285, what matters is whether Plaintiffs' claims for patent infringement were exceptionally weak, not simply whether the claims were unmeritorious at the summary judgment stage of the case.

Reviewing the totality of the circumstances in this case, Plaintiffs' claims for patent infringement were not objectively baseless or frivolous. Plaintiffs' claims for patent infringement withstood both Shoreline's Rule 12(b)(6) partial motion to dismiss and Shoreline's early partial motion for summary judgment. (See Doc. Nos. 226, 234.)

At claim construction, Plaintiffs lost on a key claim term that ultimately led to the Court's entry of summary judgment of non-infringement. But resolution of the claim construction issues related to that claim term required a lengthy and detailed analysis of highly complicated prosecution history, (see Doc. No. 208 at 20-35), and Plaintiffs' arguments in support of its proposed construction for that term were reasonable. See SFA, 793 F.3d at 1348 ("A party's position on issues of law ultimately need not be correct for them to not stand[] out, or be found reasonable. 'Reasonable minds can differ as to claim construction positions and losing constructions can nevertheless be nonfrivolous.'" (quoting Raylon, LLC v. Complus Data Innovations, Inc., 700 F.3d 1361, 1368 (Fed. Cir. 2012))). Further, Plaintiffs won and Shoreline lost on other important claim terms. (See, e.g., Doc. No. 208 at 14-20.) Plaintiffs later moved for reconsideration of the Court's construction as to the claim term "makes the cell more susceptible to reprogramming." (See Doc. No. 255 at 7-28.) And Plaintiffs' arguments in support of its motion for reconsideration were also reasonable. See SFA, 793 F.3d at 1348.

In further support of the reasonableness of Plaintiffs' actions in this case, Plaintiffs dropped their claims for literal infringement of the asserted method patents following the Court's issuance of its claim construction order and proceeded on a theory of infringement only under the doctrine of equivalents. Although that theory of infringement under the doctrine of equivalents was eventually defeated via Shoreline's motion for summary

judgment of non-infringement, Plaintiffs' theory of infringement under the doctrine of equivalents was reasonable and within the permissible range of advocacy.

Indeed, Shoreline's own actions in this case support the notion that Plaintiffs' claims were not exceptionally weak. An accused infringer's conduct is a factor that a district court may consider in making an exceptionality determination under § 285. See Stone Basket Innovations, LLC v. Cook Med. LLC, 892 F.3d 1175, 1181 (Fed. Cir. 2018) ("The District Court was well within its discretion to factor in Cook's litigation conduct, because 'the conduct of the parties is a relevant factor under Octane's totality-of-the-circumstances inquiry, including the conduct of the movant.'" (quoting Gaymar, 790 F.3d at 1373)). In this case, rather than challenging Plaintiffs' final infringement contentions via an early motion for summary judgment of non-infringement, Shoreline waited until the pretrial motion cutoff and then filed voluminous summary judgment and Daubert motions on a variety of issues in the case. As such, Shoreline's own conduct at the pretrial motion cutoff deadline weighs against finding this case to be exceptional. See, e.g., Neville v. Found. Constructors, Inc., No. SACV1702507AGAGR, 2019 WL 8195559, at *1 (C.D. Cal. Dec. 2, 2019) (finding case not exceptional where instead of "challeng[ing] Plaintiffs' final infringement contentions," "Defendants continued litigating the matter, including with highly substantive summary judgment motions on the merits of almost all issues in the case"). In sum, Plaintiffs' claims for patent infringement in this case were reasonable and not objectively baseless.

Shoreline also argues that this case is exceptional because it was not brought in good faith. (Doc. No. 429 at 10-11; Doc. No. 432 at 4-5.) In support of this contention, Shoreline speculates that Plaintiffs brought the present action for the purposes of: intimidating Dr. Kaufman, casting a cloud over Shoreline's business, and wasting Shoreline and Dr. Kaufman's capital. (Id. at 10.) But there is no evidence in the record supporting any of these assertions by Shoreline that the action was brought in bad faith. The only evidence in the record shows that Plaintiffs brought the present action to enforce their patent rights against a competitor, which is permissible and not an improper motive. See Checkpoint

Sys., Inc. v. All-Tag Sec. S.A., 858 F.3d 1371, 1375 (Fed. Cir. 2017) ("[M]otivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive.  A patentee's assertion of reasonable claims of infringement is the mechanism whereby patent systems provide an innovation incentive."); see also C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("The law recognizes a presumption that the assertion of a duly granted patent is made in good faith; this presumption is overcome only by affirmative evidence of bad faith. (citations omitted)).  As such, the Court rejects Shoreline's speculation that the action was brought by Plaintiffs in bad faith.

Finally, Shoreline argues that this case is exceptional because Plaintiffs presented a shifting damages theory that was contrary to the law and fact.  (Doc. No. 429 at 18-23; Doc. No. 432 at 8-10.)  The Court never ruled on the merits of Plaintiffs' reasonable royalty damages theory in this case.  The Federal Circuit has "made abundantly clear that district courts have wide latitude 'to refuse to add to the burdens of litigation by opening up issues that have not been litigated but are asserted as bases for a fee award.'"  Munchkin, Inc. v. Luv n' Care, Ltd., 960 F.3d 1373, 1378 (Fed. Cir. 2020) (quoting Thermolife, 922 F.3d at 1357).  In light of this, the Court declines to consider the merits of Plaintiffs' reasonable royalty damages theory as part of the exceptional case determination for this action.

In sum, considering the totality of the circumstances, this case was a heavily litigated but still ultimately run-of-the-mill patent case.  The case was hard fought and contentious and involved very complicated technology, but neither side engaged in any unreasonable or bad faith litigation tactics.  Therefore, it is not an exceptional case under § 285.  See Octane Fitness, 572 U.S. at 555 (explaining that an exceptional case is one that "sufficiently set itself apart from mine-run cases" due to "subjective bad faith or exceptionally meritless claims").  As a result, the Court denies Shoreline's motion for attorney's fees under 35 U.S.C. § 285.

/ / /

/ / /

## Conclusion

For the reasons above, the Court denies Shoreline's motion for attorney's fees.

**IT IS SO ORDERED.**

DATED: October 16, 2023

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT